NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4547-15T4
NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
WATER COMPLIANCE AND ENFORCEMENT,

 Petitioner-Respondent,

v.

CHEYENNE CORPORATION and
CAYUSE, LLC, t/a WILD
WEST CITY,

 Respondents-Appellants.

_________________________________

CHEYENNE CORPORATION and
CAYSE, LLC, t/a WILD WEST
CITY,

 Petitioners-Appellants,

v.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
WATER ALLOCATION,

 Respondent-Respondent.
_________________________________

 Submitted October 17, 2017 – Decided October 27, 2017

 Before Judges Fisher and Fasciale.
 On appeal from the New Jersey Department of
 Environmental Protection, Docket Nos. 130001-
 1904320 and 171221186.

 Mary K. Benson, attorney for appellant.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Mellisa H. Raksa,
 Assistant Attorney General, of counsel; Susan
 Savoca, Deputy Attorney General, and Melissa
 P. Abatemarco, Deputy Attorney General, on the
 brief).

PER CURIAM

 Cheyenne Corporation (Cheyenne) and Cayuse, LLC (Cayuse),

trading as Wild West City (WWC), a seasonal western theme park,

appeals from a May 12, 2016 final agency decision by the New Jersey

Department of Environmental Protection (NJDEP). The decision

adopted an initial opinion by an administrative law judge (ALJ)

granting NJDEP's motion for summary decision and directing WWC to

re-designate or decommission its original water well; and denied

WWC's motions for summary decision and a waiver request. We

affirm.

 Cayuse operates WWC, which is located on property owned by

Cheyenne. WWC is open from May through mid-October. Since the

1950s, a well has provided potable water to employees and patrons.

The well is located in a building on the highest point of the

property and is five feet long, five feet wide, and five feet

deep. The well casing is approximately one to three inches above

 2 A-4547-15T4
the cement floor.1 The well is located approximately two-hundred

feet from a septic system. WWC manages animal waste on site from

livestock in the park. According to the NJDEP, little is known

about the construction or structural integrity of the well, and

WWC agrees that because "the well was constructed before well

construction details were required[,] there are no records for

this well on file with the State of New Jersey."

 WWC monitored the well for total coliform each calendar

quarter that the system provided water to the public. On October

21, 22, and 23, 2010, the well water tested positive for E. coli.

In October 2010, NJDEP issued WWC a Notice of Non-Compliance,

citing violations of the New Jersey Safe Drinking Water Act (SDWA),

N.J.S.A. 58:12A-1 to -37. The notice required WWC to detail

proposed or completed remedial measures.

 WWC suggested several reasons for the October 2010 positive

tests. WWC believed an animal may have burrowed into the well pit

area and covered the bottom of the well pit with four to six inches

of dirt. WWC also considered that the contamination might be due

to nearby road construction, which may have contaminated the

aquifer where the well is located.

1
 Current standards require well casings to be at least twelve
inches above grade. N.J.A.C. 7:9D-2.3(b)(1).

 3 A-4547-15T4
 In March 2011, WWC communicated with NJDEP about a corrective

action plan. WWC agreed to: (1) extend the well casing, repair

the leak in the distribution manifold, and replace the well seal;

and (2) shock chlorinate the system to kill the E. coli bacteria.

If the water samples were still positive for E. coli at that point,

WWC stated it would "seek financing to dig a new well."

 NJDEP approved the corrective action plan and required that

two rounds of water samples be collected five days apart showing

no chlorine residual in the well. NJDEP stated further that the

conditions must be met by the time WWC opened for its 2011 season

on April 30, 2011, or WWC would be required to "provide a new

source of water or install [four-]log virus inactivation."

 In April 2011, WWC repaired the leak in the distribution

manifold and replaced the sanitary seal. WWC did not extend the

well casing. In April 2011 and May 2011, WWC sampled the water,

which tested negative for total coliform and E. coli. From March

2011 to May 2011, the water tested negative for total coliform and

E. coli.

 On May 2011, NJDEP permitted WWC to resume using the well for

potable water. However, NJDEP required that WWC provide additional

information on how it improved the well, on chlorination

procedures, and NJDEP directed bi-weekly testing. NJDEP also

implemented procedures to follow if the water tested positive for

 4 A-4547-15T4
E. coli, including the option to either install a new well or

install permanent four-log disinfection treatment within 120 days.

WWC agreed to these conditions.

 In September 2011, a water sample from the well tested

positive for total coliform and for E. coli. Less than two weeks

later, another water sample tested negative for total coliform and

E. coli, but a sample from the distribution system tested positive

for both. As a result, WWC made available a temporary alternative

water source (a water truck). WWC then asked NJDEP to consider

the positive raw water sample as an "anomaly" because it had

previously obtained negative testing samples, and Hurricane Irene

may have affected the water sample. WWC suggested it could test

the water weekly in lieu of other corrective actions.

 In late September 2011, NJDEP rejected WWC's request and

required WWC to comply with the imposed conditions, including

either installing a new well or installing permanent four-log

disinfection treatment. NJDEP further directed WWC to consult

with NJDEP within thirty days as to whether to install a new well

or to install four-log treatment on the existing well within 120

days.

 In November 2011, WWC asked NJDEP to reconsider. NJDEP denied

the request and required WWC to complete the necessary corrective

action by January 2012. WWC also requested a variance pursuant

 5 A-4547-15T4
to N.J.S.A. 58:12A-5, so that it would not have to drill a new

well or install the permanent four-log disinfection treatment in

the original well. In February 2012, NJDEP issued WWC a Notice

of Non-Compliance for failure to timely complete the corrective

action.

 In April 2012, WWC submitted a corrective action plan. WWC

again requested the September 2011 positive water samples be

invalidated, citing negative water samples and the storms

occurring in that time period. NJDEP denied the repeated request

to invalidate the September 2011 test results, directed WWC to

disconnect the well within twenty-four hours and provide another

source of potable water, and instructed WWC to submit a corrective

action plan, as they agreed by April 13, 2012. WWC stated it had

"no intention at present of disconnecting or discontinuing the use

of our current well until we resolve this matter." WWC agreed to

post at all bathrooms and sinks not to use the water, and stated

it would make bottled water available.

 In June 2012, WWC completed construction of a new well. That

month, NJDEP informed WWC it could take steps to re-designate the

original well for non-potable use. NJDEP informed WWC that if it

did not complete the steps within thirty days, the original well

would need to be decommissioned.

 6 A-4547-15T4
 On September 25, 2012, WWC submitted a request pursuant to

N.J.A.C. 7:1B to waive the decommissioning requirements in

N.J.A.C. 7:9D-3.1. On the same day, NJDEP informed WWC its waiver

request was incomplete and therefore would not be considered. WWC

renewed its request to waive the requirements to decommission the

original well, and in October 2012, NJDEP deemed the request

complete. In April 2013, NJDEP denied the waiver request because

it did not meet the requirements under N.J.A.C. 7:1B. WWC appealed

the waiver denial and requested a hearing, and the matter was

transmitted to the Office of Administrative Law (OAL).

 On April 26, 2013, NJDEP issued an administrative order

requiring WWC re-designate or decommission the original well. WWC

then requested a hearing on the administrative order, and the

matter was transmitted to the OAL. In June 2014, the OAL

consolidated the matters.

 The parties filed motions for summary decision. On December

31, 2015, the ALJ issued an initial decision granting NJDEP's

motion for summary decision, and upholding NJDEP's denial of WWC's

waiver request. The ALJ stated, "[t]he undisputed facts detail

[a] series of events, which culminated in two instances of positive

test samples for E. coli. . . . The preponderance of the credible

evidence established no basis for concluding that [NJDEP] deviated

from requiring the necessary corrective action consistent with its

 7 A-4547-15T4
legal obligation." The ALJ also found that WWC should re-designate

the original well for non-potable use or decommission it, and that

WWC's waiver request was properly denied. On May 12, 2016, the

NJDEP Commissioner issued a final twenty-five page opinion

adopting the ALJ's initial decision.

 On appeal, WWC argues that (1) the findings of the ALJ and

NJDEP are unsupported by the evidence; (2) NJDEP acted arbitrarily

by ordering WWC to cease testing the original well, ignoring WWC's

negative water-test results, and by concluding the original WWC

well was unsafe; (3) NJDEP's strict interpretation of the

corrective action plan was arbitrary, and violated WWC's right to

due process of law; (4) the finding that WWC's well endangers the

public health is unsupported by substantial evidence, and NJDEP

arbitrarily denied WWC's waiver request; and (5) NJDEP violated

the administrative procedure act.

 We have "a limited role in reviewing a decision of an

administrative agency." Henry v. Rahway State Prison, 81 N.J.

571, 579 (1980). "A strong presumption of reasonableness attaches

to [an agency decision]." In re Vey, 272 N.J. Super. 199, 205

(App. Div. 1993), aff'd, 135 N.J. 306 (1994). We reverse an

agency's decision only where it is arbitrary, capricious,

unreasonable or unsupported by credible evidence in the record.

Henry, supra, 81 N.J. at 579-80.

 8 A-4547-15T4
 In reviewing whether an agency's action was arbitrary,

capricious, or unreasonable, we consider:

 (1) whether the agency's action violates
 express or implied legislative policies, that
 is, did the agency follow the law; (2) whether
 the record contains substantial evidence to
 support the findings on which the agency based
 its action; and (3) whether in applying the
 legislative policies to the facts, the agency
 clearly erred in reaching a conclusion that
 could not reasonably have been made on a
 showing of the relevant factors.

 [Mazza v. Bd. of Trs., Police & Firemen's Ret.
 Sys., 143 N.J. 22, 25 (1995).]

 An ALJ may grant a motion for summary decision "if the papers

and discovery which have been filed, together with the affidavits,

if any, show that there is no genuine issue as to any material

fact challenged and that the moving party is entitled to prevail

as a matter of law." N.J.A.C. 1:1-12.5(b). "Once the moving

party presents sufficient evidence in support of the motion, the

opposing party must proffer affidavits setting 'forth specific

facts showing that there is a genuine issue which can only be

determined in an evidentiary proceeding.'" Contini v. Bd. of

Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995),

(quoting N.J.A.C. 1:1-12.5(b)), certif. denied, 145 N.J. 372

(1996). The standard is essentially the same as the standard

"governing a motion under Rule 4:46-2 for summary judgment in

civil litigation." Ibid.

 9 A-4547-15T4
 The SDWA, N.J.S.A. 58:12A-1 to -37, declares that "it is a

paramount policy of the State to protect the purity of the water

we drink and that [NJDEP] shall be empowered to promulgate and

enforce regulations" related to drinking water. N.J.S.A. 58:12A-

2. NJDEP accordingly adopted primary drinking water regulations

that apply to public water systems and identify contaminants that

may adversely affect public health, specify a maximum contaminant

level (MCL) for each contaminant, and set criteria to ensure

drinking water complies with the MCL. N.J.A.C. 7:10-5.3. NJDEP

adopted the national primary drinking water regulations, 40 C.F.R.

§ 141, which includes analytical requirements for total coliform

and E. coli. 40 C.F.R. § 141.21.

 The SDWA authorizes NJDEP to enforce the drinking water

requirements. N.J.S.A. 58:12A-4(c). N.J.S.A. 58:4A-4.2 also

authorizes NJDEP to direct a well be sealed that is "not in use

. . . or if it endangers life." NJDEP may order that any well be

decommissioned which is abandoned, "has not been maintained in a

condition that ensures protection from contamination for the

subsurface and percolating waters of the State," is damaged, has

been replaced by another well, or is contaminated, among other

reasons. N.J.A.C. 7:9D-3.1(a).

 Here, the undisputed credible evidence shows WWC's original

well had two positive tests for E. coli over a one-year period.

 10 A-4547-15T4
NJDEP repeatedly tried to work with WWC, and allowed WWC to resume

use of the well after the first E. coli incident. WWC never

definitively found the cause of either incident. The record shows

NJDEP repeatedly directed WWC to submit a corrective action plan

after the second incident. Pursuant to the parties' agreement

after the first incident, WWC was to drill a new well or install

the permanent four-log disinfection system in the original well

after a second incident of E. coli. WWC eventually chose to

install a new well.

 WWC argues that because most of the test results have been

negative for total coliform and E. coli, and because the second

E. coli incident could have been affected by Hurricane Irene, it

should be able to resume use of the original well for potable use.

WWC does not provide any credible proof that its well was submerged

or otherwise directly affected by Hurricane Irene, but simply

states that other nearby wells tested positive for E. coli and

storms can cause these positive results. WWC's argument fails.

NJDEP has the discretion to regulate public drinking water and to

act in the interest of public safety. Although most of WWC's

water sample tests were negative for E. coli, NJDEP had the

discretionary power to require corrective action after the

positive results. After two separate incidents of positive E.

coli, NJDEP gave WWC options of installing a new well or installing

 11 A-4547-15T4
the necessary disinfection system. WWC does not dispute the two

separate E. coli incidents.

 We conclude NJDEP did not act arbitrarily or capriciously

when denying the waiver request for decommissioning the well.

NJDEP may "waive the strict compliance with any of its rules" in

the case of "(1) [c]onflicting rules; (2) [t]he strict compliance

with the rule would be unduly burdensome; (3) [a] net environmental

benefit; or (4) [a] public emergency." N.J.A.C. 7:1B-2.1. The

record shows that WWC failed to demonstrate any of these

conditions. Although WWC argues the corrective action is

expensive, it does not rise to the level to be unduly burdensome.

It was within NJDEP's discretion to deny such a waiver request.

NJDEP is charged with protecting public drinking water and there

is substantial evidence that NJDEP acted appropriately when

adopting the ALJ's decision granting NJDEP's motion for summary

decision and upholding NJDEP's denial of WWC's waiver request.

 As the ALJ stated, the "preponderance of the credible evidence

established no basis for concluding that [NJDEP] deviated from

requiring the necessary corrective action consistent with its

legal obligation." The ALJ found that WWC should re-designate the

original well for non-potable use or decommission it, and that

WWC's waiver request was properly denied. The NJDEP Commissioner

filed a comprehensive twenty-five page opinion adopting the ALJ's

 12 A-4547-15T4
decision. The decision was not arbitrary, capricious, or

unreasonable and it was supported by credible evidence in the

record.

 We conclude that WWC's remaining arguments are without

sufficient merit to discuss in a written opinion. R. 2:11-

3(e)(1)(E).

 Affirmed.

 13 A-4547-15T4