**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5006-17T3

IN THE MATTER OF DANIEL
PURDY, CAMDEN COUNTY
CORRECTIONAL FACILITY

_____

Submitted May 28, 2020 – Decided June 12, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2015-2646.

Alterman & Associates LLC, attorneys for appellant
Daniel Purdy (Stuart J. Alterman, of counsel; Arthur J.
Murray, on the brief).

Christopher A. Orlando, Camden County Counsel,
attorney for respondent Camden County Department of
Corrections (Howard Goldberg, First Assistant County
Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for
respondent New Jersey Civil Service Commission
(George Norman Cohen, on the statement in lieu of
brief).

PER CURIAM

Appellant Daniel Purdy appeals from the May 25, 2018 final administrative decision of the Civil Service Commission (Commission) that upheld action taken by Purdy's employer, the Camden County Correctional Facility (CCCF), to terminate Purdy's employment as a county correction officer based on charges that he engaged in conduct unbecoming a public employee; insubordination; inability to perform duties; neglect of duty; discrimination that affects equal employment; and other sufficient causes, including violations of the CCCF Rules of Conduct. We affirm.

The procedural history and facts of this case are fully set forth in the April 6, 2018 Initial Decision rendered by the Administrative Law Judge (ALJ) following a four-day hearing. The Commission adopted these findings in its final decision and, therefore, we need only briefly summarize them here.

The CCCF's rules prohibit correction officers like Purdy from possessing or using personal cell phones in the secure areas of the facility. Purdy was aware of these prohibitions.

While investigating possible misconduct by other correction officers in December 2014, the CCCF's Internal Affairs Unit discovered that one of the officers was in possession of two cell phones. The officer consented to a search of the phones, which revealed that between September 30, 2014 and December

2

28, 2014, Purdy and other officers smuggled personal cell phones into the secure areas of the facility, and exchanged approximately 5800 text messages during two separate group text chains.  Some of these messages contained photographs of inmates and computer screens displaying confidential information.

The ALJ examined all of the messages sent by Purdy and the other officers and found that the message chains contained "multiple derogatory, inappropriate[,] and racist text messages" referring to inmates, co-workers, and supervisors.  Purdy was responsible for writing and sending 461 of the texts, and the ALJ found that the following ten texts were representative of the extremely inappropriate nature of his communications:

- "Happy Born day nigga"

- "That one smooth ape over-paid nigga" (referring to . . . the Warden's assistant)

- [Purdy] posted a picture of a white male wearing a red shirt with an American flag stating "I like shooting cans, Mexican, Africans, um Puerto Ricans"

- "How many years that crazy nig got"

- "sleepy nigga" (referring to [the Warden])

- "Nah, that spook at home making stuffed shells"

- [Purdy] posted a picture providing information regarding "White European Pride" with a link to

an organization called "The Advanced White Society"

- [Purdy] posted that he wanted to "curb stomp" one of his supervising officers

- [Purdy] called . . . [the] Warden . . . who is Hispanic, "Dora the Explorer"

- [Purdy] made a comment about a female co-worker "They calling her a dusty coon . . . um . . . negress something about her hair . . . it was like a jailhouse mop"

Purdy did not dispute that he authored or received the messages found on the text chains, although he stated that only 39 of the 461 messages he wrote were sent while on duty. He also acknowledged he should be disciplined, but argued that removal from employment was too severe a penalty. Purdy also claimed he had a First Amendment right to make the comments he did.

In a thorough initial decision, the ALJ rejected Purdy's arguments, sustained all of the charges against him, and recommended that Purdy be removed from employment. As for Purdy's First Amendment claim, the ALJ first found that regardless of the racist content of the text messages, Purdy still brought an unauthorized cell phone into the secure areas of the CCCF, was aware that the messages he exchanged and received contained photographs of inmates and confidential computer screens, and failed to report this misconduct, in

4

A-5006-17T3

violation of the facility's rules. The ALJ concluded that Purdy's actions in this regard clearly warranted his removal from employment.

Relying on Karins v. Atlantic City, 152 N.J. 532 (1998), the ALJ further found that Purdy's "speech cannot be characterized as constituting speech on a matter of public concern and that the State's interest in promoting the efficiency of the public service it performs through its employees [outweighed Purdy's] interest in making these racist and derogatory comments." Therefore, the ALJ found that Purdy's attempted First Amendment "defense" lacked merit.

The ALJ concluded that Purdy's conduct was so egregious that progressive discipline did not need to be considered, and that his removal from employment was warranted. The ALJ explained:

> The public who is served, and other employees, deserve to be able to expect that those individuals that exercise control over and interact with them will not make them targets of inappropriate, derogatory, and racist chats. To expect otherwise is to invite disorder and confusion in responding to certain functions within the jail, possibly leading to worse, more dangerous situations, and serves to undermine the confidence the public places in the correctional system. It cannot be tolerated.

This appeal followed.

On appeal, Purdy again argues that he had a First Amendment right to send racist text messages on an unauthorized cell phone he improperly brought

into the secure areas of a correctional institution. He also asserts he should not have been found guilty of the discrimination that affects equal employment charge because no one had brought a claim against him under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Finally, Purdy contends that the evidence does not support the Commission's decision to remove him from employment. We disagree.

Established precedents guide our task on appeal. Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "[A] 'strong presumption of reasonableness attaches'" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). Additionally, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant"). To that end, we will

"not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011); see also Taylor, 158 N.J. at 656-57 (discussing the narrow appellate standard of review for administrative matters).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. "In light of the deference owed to such determinations, when reviewing administrative sanctions, 'the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Id. at 28-29

(alteration in original) (quoting In re Polk, 90 N.J. 550, 578 (1982)). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Id. at 29.

Applying these principles here, we discern no basis for disturbing the Commission's decision to remove Purdy from employment. The Commission's decision is supported by substantial credible evidence in the record. Purdy violated the CCCF's rules by bringing a personal cell phone into the secure areas of the facility, where he used it to exchange racist text messages, photographs of inmates, and confidential information obtained from computers. As our Supreme Court held over twenty years ago, conduct of this nature is simply not protected by the First Amendment. Karins, 152 N.J. at 563.

The Commission also properly adopted the ALJ's conclusion that Purdy violated N.J.A.C. 4A:2-2.3(a)(9), which states that a public employee may be "subject to discipline for . . . [d]iscrimination that affects equal employment opportunity[.]" Contrary to Purdy's unsupported contention, evidence of a cognizable claim against a public employee for a violation of the LAD is not required to support a finding of guilt under the regulation. See Karins, 152 N.J. at 561-62 (stating that "[i]n a disciplinary case such as this one, it is not necessary 'for an employer to allow events to unfold to the extent that the

disruption of the office and the destruction of working relationships is manifest before taking action'") (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 152 (1983)).

Finally, the Commission's decision to impose the penalty of removal is certainly not "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." <u>Hermann</u>, 192 N.J. at 28-29. We therefore affirm substantially for the reasons expressed by the Commission, which incorporated the detailed findings of fact and conclusions of law rendered by the ALJ in his well-reasoned written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION