**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4576-18T3

IN THE MATTER OF
CHRISTOPHER D'AMICO,
CITY OF PLAINFIELD,
FIRE DEPARTMENT

_____

Argued September 29, 2020 - Decided  October 19, 2020

Before Judges Mayer and Susswein.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-944.

Littie E. Rau argued the cause for appellant City of Plainfield (Ruderman & Roth, LLC, attorneys; Littie E. Rau, of counsel and on the briefs).

Nicholas J. Palma argued the cause for respondent Christopher D'Amico (Nicholas J. Palma, PC, attorneys; Nicholas J. Palma, of counsel and on the brief.)

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

The City of Plainfield (City) appeals from a May 22, 2019 decision of the Civil Service Commission (Commission), affirming an April 2, 2019 initial determination by an administrative law judge (ALJ). The Commission and the ALJ found Christopher D'Amico was wrongfully terminated from his employment as a City firefighter and reinstated D'Amico to his job position. We affirm.

D'Amico was terminated by the City in September 2017 for failure to display moral character in his position as a firefighter. The City's decision was grounded on D'Amico's admitted alteration of a document submitted with his application for employment as a City firefighter.

To become a City firefighter, applicants are required to prove residency. D'Amico submitted several documents supporting his Plainfield residency, including a roller hockey alliance insurance card (card). D'Amico modified the card to include his actual residential address in Plainfield. According to D'Amico, he revised the card because he did not have additional proof of residency when he was asked for further documentation as part of the pre-employment review process. The City's hiring committee recommended against hiring D'Amico based on his alteration of the card submitted with his employment application.

However, the City's Fire Chief decided to hire D'Amico. D'Amico attended the fire academy starting in June 2017. A citizen questioned the residency of several cadets attending the fire academy at that time. As a result, D'Amico's residency was re-examined in July 2017. During the July re-examination, D'Amico again admitted to altering the card. Ultimately, the concerned citizen's non-residency allegation regarding D'Amico was deemed to be unfounded.

D'Amico graduated from the fire academy in September 2017. Because D'Amico admitted to altering a residency document, even though the information added to the card was accurate, the City's Director of Public Safety told the City's Fire Chief to terminate D'Amico. When D'Amico and two other cadets reported to work on September 11, 2017, they were terminated from their jobs.

D'Amico appealed his termination. The matter was referred to the Office of Administrative Law and assigned to an ALJ. The ALJ held a testimonial hearing and concluded the City's termination was improper because D'Amico's altering the card to include his Plainfield address did not significantly impinge on the character and morals of a firefighter. The ALJ noted D'Amico inserted truthful information regarding his address on the card, which was one of several

3

documents supplied to prove his residency. After considering the testimony and evidence, the ALJ reversed D'Amico's termination as a City firefighter, reinstated him, and compelled back pay.

The City filed exceptions, contending the ALJ misapplied to burden of proof, and D'Amico bore the burden of proving he did not falsify a document under N.J.A.C. 4A:4-6.1(a)(6). The City asserted D'Amico was terminated for altering the card and lying to the investigators.

After reviewing the City's exceptions, the Commission agreed with the ALJ. It held D'Amico provided his true address on the card and the addition of correct information on the document did not indicate a lack of character or morals to be a firefighter. Even if it were, the Commission concluded the City was aware of the altered document in May 2017, before D'Amico was hired and attended the fire academy. In addition, because D'Amico was on the job for only three or four hours at the time he was terminated, the Commission concluded the City had the burden of proving D'Amico was guilty of the charges. Based on its findings, the Commission reinstated D'Amico, and awarded him back pay, benefits, and seniority status.

On appeal, the City argues the Commission's decision was arbitrary and capricious because it disregarded established case law and its own precedent. In

addition, the City claims the Commission's decision was unreasonable and unsupported by substantial credible evidence in the record. Further, the City suggested we should draw our own inferences based on the facts presented during the hearings before the ALJ. We disagree.

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "[A] strong presumption of reasonableness attaches" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). Additionally, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v Kordulak Bros., 44 N.J. 589, 599 (1965)).

The burden is on the appealing party to demonstrate grounds for reversal. Matter of State & Sch. Emps.' Health Benefits Comm'ns' Implementation of I/M/O Yucht, 233 N.J. 267, 285 (2018); see also Bowden v. Bayside Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant."). Under the arbitrary and capricious standard, our scope of review is guided by three inquiries: (l) whether the agency's decision conforms with

relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the agency clearly erred in reaching a result that was either arbitrary, capricious or unreasonable. In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In Re Carter, 191 N.J. 474, 482-83 (2007)). When an agency decision satisfies these criteria, we accord substantial deference to the agency's fact-findings and legal conclusions, being mindful of the agency's "expertise and superior knowledge of a particular field." Circus Liquors, Inc., v. Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We may not substitute our judgment for the agency's even though we might have reached a different result. Stallworth, 208 N.J. at 194; see also Taylor, 158 N.J. at 656-57 (discussing the narrow appellate standard of review for administrative matters).

Applying these principles, we discern no basis for disturbing the Commission's decision to reinstate D'Amico to his position as a City firefighter and to award him back pay and benefits. The Commission conducted an independent review of the evidence and examined the ALJ's decision in light of the evidence. Based on that independent review, the Commission agreed D'Amico "was simply lazy in inputting truthful information," and his laziness in

completing the information to procure the card did not "significantly impinge upon the character and morals of being a [f]irefighter . . . ." The Commission also accepted the ALJ's credibility findings. The ALJ found D'Amico to be credible, indicating he only "showed me true remorse for what I can only conclude was laziness not moral ineptitude."

While the City suggests we independently review the facts presented to the ALJ and make our own inferences based on that evidence, we decline to do so. Whether we might have reached a different result is contrary to the well-established standard for review of agency determinations on appeal. We only review whether the agency's final decision was arbitrary, capricious, unreasonable, or lacked sufficient credible evidence in the record.

D'Amico never disputed that he altered the card. In accordance with legal precedent, firefighters are subject to an "implicit standard of good behavior . . . ." Pepe v. Twp. of Springfield, 337 N.J. Super. 94, 103 (App. Div. 2001). Based on its review of the evidence, the Commission found D'Amico's "modifying the [card] by providing his actual address and identification number on it does not indicate that he lack[ed] the character and morals to be a [f]ire [f]ighter." The Commission held D'Amico's acts were insufficient to cast doubt

7

upon his maturity and judgment, which were traits necessary for him to serve as a City firefighter.

The ALJ and Commission considered the testimony of several witnesses for the City who offered their opinion that D'Amico's alteration of the card fell below the requisite standard of behavior for a firefighter. The testimony of these witnesses was weighed against the City Fire Chief's testimony, who explained D'Amico's voluntary agreement to participate in the fire academy a second time[1] and his performance while in the fire academy demonstrated a greater than usual standard of good behavior.

Having reviewed the record, we are satisfied the Commission rendered findings of fact and conclusions of law firmly grounded in the evidence presented. The Commission's determinations were supported by substantial credible evidence in the record and were neither arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] D'Amico previously obtained his Level I and Level II firefighter certificates prior to entering the fire academy in June 2017. The City's Fire Chief testified D'Amico attended the academy a second time to build comradery with the other cadets hired at the same time.