272 N.J. Super. 199 (1993)
639 A.2d 724
IN THE MATTER OF ANASTASIA M. VEY, POLICE OFFICER OF NORTH WILDWOOD CITY.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 1993.
Decided March 12, 1993.
*200 Before Judges KING and THOMAS.
Wallen and Beakley, attorneys for appellant Anastasia M. Vey (Robert P. Beakley, of counsel.)
Stagliano & DeWeese, attorneys for respondent City of North Wildwood (David S. DeWeese, of counsel).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent New Jersey Merit System Board (Mary C. Jacobson, *201 Senior Deputy Attorney General, of counsel; June K. Forrest, Senior Deputy Attorney General, on the brief).
PER CURIAM.
The procedural history in this case is amply described in our prior unpublished opinion and in the opinion of the Supreme Court. See 124 N.J. 534, 538, 591 A.2d 1333 (1991). The Supreme Court concluded that it was "unable to determine how the specific findings in the record demonstrate the unfitness to serve that is the only basis to remove her name from the list of eligible candidates." Id. at 535, 591 A.2d 1333. In default of such an adequate rationale, the Court "remand[ed] the matter to the Department of Personnel to relate its findings to the statutory qualifications." Id. at 535-36, 591 A.2d 1333. The agency reviewed the matter and reaffirmed the ruling that appellant was not eligible for the appointment. The matter now has returned to us for review.
The Supreme Court's concern was with correlation of the test results to "actual job performance." Id. at 541, 544, 591 A.2d 1333. The Court acknowledge the appointing authority's right to "always look for superior candidates, not just average candidates." Id. at 543, 591 A.2d 1333. However, the appointing authority "bears the burden of proving that the candidate meets the regulatory description and is subject to removal for psychological unfitness." Id. at 540, 591 A.2d 1333.
Upon receipt of the Supreme Court's remand, the Department of Personnel (DOP) remanded to the City of North Wildwood on July 24, 1991. The City reviewed the matter and again requested removal of appellant's name from the eligibility list. The Medical Review Panel (Drs. Perr and Johnson) again reviewed the matter and agreed that appellant's name should be removed from the list. On February 21, 1992 the Merit System Board agreed with and confirmed the decision of the appointing authority and the Medical Review Panel. The Board essentially adopted the conclusions of the Medical Review Panel, stating:

*202 Having considered the record and the Medical Review Panel's Report and Recommendation issued thereon, the exceptions filed by Mr. Beakley and the cross-exceptions filed by the City of North Wildwood, and having made an independent evaluation of same, the Merit System Board at its meeting on February 11, 1992 accepted and adopted the findings and conclusions as contained in the Medical Review Panel's Report and Recommendation. Contrary to exceptions filed by Mr. Beakley, the Department of Personnel record was not improperly expanded and has contained the documents in question since February, 1988.
The Merit System Board finds that the appointing authority for the City of North Wildwood met its burden of proof that Anastasia Vey is mentally unfit to perform effectively the duties of a Police Officer and therefore orders that her name be removed from the eligible list for reasons of psychological unfitness.
We turn to the report and recommendation of Drs. Perr and Johnson, the Medical Review Panel. The Panel "reviewed the entire record," including the supplementation after remand. The Panel had these comments on the "Psychological Evaluative Procedures" used:
The record reveals that the Minnesota Multiphasic Personality Inventory (MMPI) was administered to the applicant on at least three separate occasions during the period May 7, 1986 (part-dated January 1, 1980) to January 18, 1988. The reason for discrepancies between the dates of the first examination remains unclarified. Certain negative tendencies are present over time in the MMPI protocols. For example, Marshall E. Levine, PH.D. in his letter dated November 7, 1988, referred to the elevated K reported by J. Smith, Ph.D., which usually indicates defensive test taking. Although the printout indicated that the performance in this instance was consonant with that of a group generally well suited for police work, the printout also is consonant with an individual who may be unpredictable in behavior, careless or irresponsible, with manipulative tendencies. Although Dr. Levin deemed these findings not significant enough to disqualify Ms. Vey, they would seem to represent negative increments for the overall evaluative picture.
The second MMPI report revealed a somewhat higher Pd score and an Ma score of 68 (report dated December 3, 1987). The second MMPI as interpreted in the Levine report describes Ms. Vey as extraverted, enthusiastic, verbal, and uninhibited. However, both that MMPI and the third MMPI of January 18, 1988 also indicate propensities to being immature, impulsive, pleasure-oriented with a low tolerance for frustration, manipulative and aggressive, with a question of unreliability and difficulties in the workplace. These are spelled out in the printout of the third MMPI (the second MMPI was not accompanied by a printout analysis). The negative trend of MMPI performances seems clear.
The adverse tendencies indicated in the MMPI protocols appear downplayed by the evaluator on the candidate's behalf in favor of a questionable initial MMPI performance. The negative trends referred to here would be relevant to impaired *203 performance of the duties of the Police Officer position, possibly causing the applicant to be a hazard to herself or others.
The negative implications of the MMPI protocols find credence in several of the findings on the Law Enforcement Assessment and Development Report (evaluations of November 24, 1986 and November 5, 1987). Notably, impulsitivity was markedly high. This and the indications of instability constitute significant findings. When findings indicative of impulsitivity and attendant poor emotional controls occur reliably within and across different test procedures, they cannot be dismissed lightly, and constitute reasonable avenues toward behavior prediction. The Job Specification lists job duties associated with the title and the knowledge and abilities needed to perform those duties. This document was reviewed by the Panel. An individual who acts impulsively, has a low tolerance for frustration, is manipulative, has poor emotional controls, would be ineffective in performing many of these tasks and could cause harm to herself as well as others. Examples of this include a police officer with those qualities who attempts to calm parties down in a dispute, tries to neutralize a dangerous situation, attempts to follow lengthy, legal guidelines and repetitive procedures, tries to perform under pressure or emotional strain, receives verbal abuse from individuals or groups, works as a group member or attempts to take charge of others, tries to gain the confidence of community members, converses with a person who attempts suicide or homicide.
As to the "Behavioral Record," The Panel had this comment:
A pertinent element in prediction of future behavior is past behavior. In this connection, the February 12, 1988 letter of Chief Anthony J. Sittineri is significant. He recounted pervasive decrement in performance over time, which manifested itself in Ms. Vey's appearance, attitude, and overall carrying out of her duties.
This negative trend in the candidate's performance of her duties was reiterated in the record by four of her colleagues and finds further support in the negative trend of MMPI performances. An incident [the "Jolly Chef" sign incident] reportedly took place on September 28, 1987 which also seems to lend some behavioral corroboration to the test findings of impulsivity.
And the Panel had these "Conclusions":
No substantial or redeeming change in this record has been discerned by this Panel over the occasions that it has been discussed and/or reviewed, i.e., the picture remains essentially the same. The recurring indications of impulsivity, with attendant poor emotional controls, together with this substantiation in the behavioral record as well as a past history of diminution in quality of performance make possible in this instance a reasonable prediction of poor performance of the Police Officer role. The test results and the behavioral record, when viewed in the light of the Job Specification for Police Officer, indicate that the action of the hiring authority should be upheld. Reliability and stability are of overriding significance for people who carry weapons in daily contact with the general populace. The test results and procedures and the behavioral record, when viewed in the light of the Job Specification, indicate that the applicant is mentally unfit for the position of Police Officer.
*204 The Panel again recommended "that appellant be removed from the eligible list for Police Officer."
We observe that the City responded to the DOP's remand by submitting a lengthy report identifying 11 psychological traits which it claimed might preclude Vey from performing police work. These included: impulsivity, manipulation, irresponsibility, frustration, unpredictability, carelessness, defensiveness, boldness, suspiciousness, uninhibited and spontaneous behavior, and unconventional beliefs. The report gave detailed examples of how each trait related to specific functions of the job. For example, the report claimed that Vey had been found increasingly impulsive in the 1986 and 1987 expert reports. It stated that as a police officer, Vey would be called upon to deal with the public on a regular basis. That negative trait precluded the effective performance of the job because it could cause an officer to react spontaneously without properly evaluating a situation. Similarly, the City asserted that Vey's high degree of suspiciousness, while generally not a negative trait for police work, is a dangerous attribute if one is overly suspicious. Such a psychological trait could carry over to the officer's functioning with superiors and fellow officers, affecting appropriate functioning. The City submitted an Operation Report indicating that Vey had been involved in a documented attempt to steal a sign and also produced work evaluations of Vey which were not favorable. These document were not new but had already been part of the record.
Appellant was afforded the opportunity to submit any material she wished in response to the City's submission. She responded by filing an extensive submission objecting to the kind and content of the information which North Wildwood submitted and also submitted her up-to-date expert's reports.
With this background, we conclude that the record justifies the conclusion of the Merit System Board's confirmation of the findings of the Medical Review Panel and the decision of the City. The clear negative trend of the MMPI (a test recognized by Civil Service in N.J.A.C. 4A:4-6.5(e)(5)) was within the Panel's interpretative *205 expertise. Other tests, the Law Enforcement Assessment and Development Report was one, showed a high degree of impulsivity, which mixed with indications of instability could be critical.
Many findings echoed each other and this augmented reasonable behavior prediction, at least to the expert Panel. The "Job Specification" itself was related by the Panel to the findings. The observed negative trend in behavior and work performance was supported by the MMPI findings and their trend. A reviewing court will not ordinarily upset a determination by an administrative agency such as the Board "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies express or implicit in the Civil Service Act." Campbell v. Dept. of Civil Service, 39 N.J. 556, 562, 189 A.2d 712 (1963); see also Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). A strong presumption of reasonableness attaches to the actions of administrative agencies. This presumption is even greater where the agency is dealing with specialized and technical matters, such as psychiatric evaluations, as was the case here. Newark v. Natural Resources Council, 82 N.J. 530, 539-40, 414 A.2d 1304 (1980), cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980).
We think that the Panel correlated adequately the disqualifying "personality traits" with the job standards and functions. Matter of Vey, 124 N.J. at 544, 591 A.2d 1333. We also conclude that appellant had a full and fair opportunity to participate in the procedure on remand, to make additional submissions, and to challenge the City's supplementary conclusions. We find that the Board, the Panel, and the City gave full consideration to the matter consistent with the Supreme Court's remand. As we stated in our initial opinion, this is a rather close case on the merits of the appeal but we do not sit to make these decisions in the first instance. We only "determine if the decision of the Merit Board in approving the City's action is arbitrary, capricious, *206 unreasonable" or without foundation in the record. We are satisfied that the Board's decision was based on substantial evidence in the record and was not a product of whim, caprice or prejudice.
Affirmed.