NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5550-14T1

IN THE MATTER OF STATE AND SCHOOL
EMPLOYEES HEALTH BENEFITS COMMISSIONS'
IMPLEMENTATION OF I/M/O PHILIP YUCHT.

Argued telephonically July 13, 2017 — Decided July 31, 2017

Before Judges Simonelli and Carroll.

On appeal from New Jersey Department of Treasury, Division of Pensions and Benefits.

Ira W. Mintz argued the cause for appellants CWA and Clinical Social Work Guild 49 (Weissman & Mintz LLC, attorneys; Mr. Mintz, on the briefs).

Danielle P. Schimmel, Deputy Attorney General, argued the cause for respondents State Health Benefits Commission and School Employees' Health Benefits Commission (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Schimmel, on the brief).

PER CURIAM

The background underlying the present appeal is set forth in our prior unpublished opinion in In re Yucht, No. A-6298-10 (App. Div. Sept. 3, 2013). Briefly summarizing, effective January 1, 2009, the State Health Benefits Commission (SHBC) and the School

Employees' Health Benefits Commission (SEHBC) (collectively, the Commissions) both voted to implement a tiered system for the payment of out-of-network behavioral services provided to participating members based on the providers' professional level. Id. (slip op. at 5). Before this change was effected, claims for such services were paid at the same rate regardless of whether the provider was a psychiatrist (M.D.), psychologist (Ph.D.), licensed clinical social worker (LCSW), licensed marriage family therapist (LMFT), licensed professional counselor (LPC), or clinical nurse specialist (CNS), even though the typical charges of these various professionals varied. Id. (slip op. at 3-4).

Following the change, all out-of-network behavioral health services provided by a M.D. continued to be paid at 100% of the usual, customary and reasonable (UCR) rate. Id. (slip op. at 5). However, members who received these services from a Ph.D. saw their reimbursement reduced by 15%, from a CNC by 30%, and from a LCSW, LMFT, and LPC by 35%. Ibid. We held that this tiered reimbursement system violated N.J.S.A. 52:14-17.46.7, which requires that participating members be reimbursed 80% of the "reasonable and customary charges" for out-of—network services, based on the 90th percentile of the Prevailing Healthcare Charges System UCR fee schedule "or a similar nationally recognized

database of prevailing health care charges." Id. (slip op. at 10).

The Commissions thereafter approved resolutions to implement our decision in Yucht, retroactive to 2009. As a result, claims submitted under the prior tiered payment system would be reimbursed if a participating member provided proof that he or she paid the difference between the provider's full charge and the amount that was previously reimbursed.

The Division of Pensions and Benefits (Division) posted notice of the Commissions' reimbursement procedure on its website, accompanied by a link to the claim form. Also, on July 22, 2014, the Division sent a letter to "[a]ll Certifying Officers, Human Resource Directors, and Benefits Administrators participating in the State Health Benefits Program and School Employees' Health Benefits Program." The letter advised that "[e]mployees who received reimbursement for behavioral health claims for services provided by an out-of-network provider between May 4, 2009 and March 23, 2014, may be entitled to a reconsideration of their claims." It enclosed the claim form to be provided to employees, and also provided a link to access the claim form on-line. The notice specified that the deadline for filing claims was December 31, 2014. Finally, it contained a section entitled "EMPLOYER RESPONSIBILITIES," directing that the employers "make this

information available to your location's employees and forward this letter and attachment to your human resources staff, benefit administrators, and any other staff members responsible for the administration of health benefits for your location's employees."

On December 3, 2014, the Communications Workers of America, AFL-CIO and Clinical Social Work Guild 49, an affiliate of the Office and Professional Employees International Union (collectively, the Unions) filed a petition with the Commissions challenging the implementation of our holding in Yucht. Specifically, the Unions asserted that the Division's "website post does not constitute adequate, meaningful notice of the members' right to recompense." The Unions requested two remedies: (1) that the December 31, 2014 deadline for filing reconsideration requests be extended; and (2) that all potentially affected members be mailed a written explanation of the Yucht decision and directions on how to apply for additional reimbursement. Alternatively, if a list of the potentially affected members was not readily available, the Union requested that the information be mailed to all members.

On June 9, 2015, the Commissions denied the Unions' petition. The Secretary to the Commissions explained:

> Your [December 3, 2014] letter was provided
> to the [SHBC] on March 11, 2015. At that
> meeting, the SHBC requested that its review

A-5550-14T1

of the request be tabled and that the Division provide information regarding the number of claims received by Horizon during the initial time period and each of the extensions.

Your letter was provided to the [SEHBC] on March 25, 2015. In reviewing your request, the SEHBC also considered the following:

- Notification was posted on the Division's website;

- Letters were sent via mail and email to all Certifying Officers at State agencies as well as local employers participating in the SHBP/SEHBP (copy enclosed); and

- 857 claims were received by Horizon within the required timeframe. Of these, 481 (56%) were determined to be ineligible for additional reimbursement.

On May 13, 2015, the above information was presented to the SHBC along with the following:

- 211 requests were received prior to the initial deadline of September 30, 2014;

- 520 requests were received between September 30, 2014 and December 31, 2014;

- 115 requests were received between December 31, 2014 and January 9, 2015 (these claims were accepted as they were postmarked prior to December 31); and

- 41 requests were received after January 9, 2015 and were denied because the deadline had passed.

The above figures were current as of May 11, 2015. The SHBC also noted that approximately 56% of claims were deemed

ineligible for additional reimbursement for one of the following reasons:

- The member was unable to provide proof of payment to the provider above Horizon's initial reimbursement (i.e., the member was not "balance-billed");

- The services were provided by a Medical Doctor and therefore the payments were not reduced as a result of tiering;

- The provider's charges were less than the tiered allowed amounts and therefore the payments were not reduced; or

- The member was not covered under the SHBP/SEHBP at the time of service.

After being presented with the foregoing information, the SHBC and SEHBC did not elect to take any action regarding this matter. Therefore, the deadline for reimbursement requests will remain at December 31, 2014 and no further notification will be distributed to members.

The Unions appeal from the Commissions' June 9, 2015 decision. They argue that the form of notice approved by the Commissions to advise members who might be entitled to additional reimbursement as a result of our decision in <u>Yucht</u> is inadequate. For the first time on appeal, they contend that the Commissions should reprocess all member claims and issue "refunds" without members filing a request for reimbursement, even when the member may have incurred no additional out-of-pocket expenses. Alternatively, the Unions assert that the Commissions should be required to provide

"meaningful notice" to members of their right to seek additional reimbursement.

In response, the Commissions argue that they provided reasonable notice of the availability of reimbursement following Yucht. They further assert that the issue of mandatory reimbursement was not raised before either Commission and therefore should not be addressed on appeal.

Established precedents guide our task on appeal. Appellate review of an administrative agency decision is limited. See In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches to the Division's decision." In re Carroll, 339 N.J. Super. 429, 437 (App. Div.) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993) aff'd, 135 N.J. 306 (1994)), certif. denied, 170 N.J. 85 (2001). The burden is on the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable, or capricious rests upon the appellant"), certif. denied, 135 N.J. 469 (1994).

"Appellate courts ordinarily accord deference to final agency actions, reversing those actions if they are 'arbitrary, capricious or unreasonable or [if the action] is not supported by

substantial credible evidence in the record as a whole.'" N.J. Soc'y for the Prev. of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Under the arbitrary, capricious, and unreasonable standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion. In re Stallworth, 208 N.J. 182, 194 (2011) (citations omitted).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, while acknowledging the agency's "expertise and superior knowledge of a particular field." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our own judgment for the agency's even though we might have reached a different conclusion. Stallworth, supra, 208 N.J. at 194; see also In re Taylor, 158 N.J. 644, 656 (1999) (discussing the narrow appellate standard of review for administrative matters).

Applying our highly deferential standard of review, we are satisfied that the record sufficiently supports the Commissions' decision that members were provided with adequate notice and instructions for submitting a request for claims reconsideration prior to the December 31, 2014 deadline. As the Commissions point out, notice was posted together with a direct link on the Division's website. Additionally, letters were sent to all Certifying Officers[1] at State agencies as well as local employers participating in the SHBP and SEHBP, directing them to make the reimbursement protocol available to employees. We note, as did the Commissions, the significant number of claims that were presented after these notices were provided. While perhaps not the most effective form of notice, we cannot conclude that the notification procedure implemented by the Commissions was not reasonably calculated to advise eligible members of their right to seek supplemental reimbursement. Absent a finding that the Commissions' action was arbitrary, capricious, or unreasonable,

---

[1] Pursuant to N.J.S.A. 52:14-17.43, "[t]he certifying agent of each participating employer shall submit to the Division of Pensions such information and shall cause to be performed in respect to each of the employees of such employer such duties as would be performed by the State in connection with the program." By regulation, "[t]he certifying officer shall be responsible for the duties described by N.J.S.A. 53:14-17.43, including providing documentation requested by the Commission or the Division in a timely manner. . . . [and] for all other duties relating to matters concerning the SHBP." N.J.A.C. 17:9-1.9(b),(c).

we are thus constrained to affirm the Commissions' notification procedures.

In their December 3, 2014 petition, the Unions requested two specific remedies, neither of which sought automatic reimbursement without the need to either apply or provide proof of loss. In conformity with general principles of appellate practice, we decline to address the Union's requests for such reliefs that were not presented to the Commissions. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (discussing the limited circumstances in which an appellate court will consider an argument first raised on appeal).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5550-14T1