**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2980-18

IN THE MATTER OF THE
CHALLENGE TO THE
DECISION OF THE NEW
JERSEY DEPARTMENT OF
ENVIRONMENTAL
PROTECTION, LAND USE
REGULATION PROGRAM
ENTERED ON FEBRUARY 2,
2019 AND MARCH 6, 2019
REGARDING NOTICE OF
ADMINISTRATIVE CHANGES
AND NOTICE OF ACCEPTANCE
OF NEW AND CHANGED
STATE PLAN POLICY MAP
PLANNING AREA
BOUNDARIES AND
DESIGNATION OF REGIONAL
CENTER, CORE AND NODE
COMMUNITY DEVELOPMENT
BOUNDARIES FOR COASTAL
PLANNING AREAS AND CAFRA
CENTERS, NODES AND CORES
UNDER N.J.A.C. 7:7-13.16,
TOWNSHIP OF LAKEWOOD,
OCEAN COUNTY, NEW JERSEY
N.J.A.C. 7:7 APPENDICES
I AND J.

_____

Argued April 19, 2021 – Decided June 22, 2021

Before Judges Currier and DeAlmeida.

On appeal from the New Jersey Department of Environmental Protection.

Michele R. Donato argued the cause for appellant Fairways at Lake Ridge Homeowners Association, Inc.

Kathrine M. Hunt, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Kathrine M. Hunt, on the brief).

PER CURIAM

Appellant Fairways at Lake Ridge Homeowners Association, Inc. (Fairways) appeals from the February 4, 2019 final agency decision of the Commissioner, Department of Environmental Protection (DEP), accepting the State Planning Commission's (SPC) January 16, 2018 endorsement of changes to the State Development and Redevelopment Plan (the State Plan) map for Lakewood Township. We affirm.

I.

The following facts are derived from the record. Fairways is a homeowners' association whose members include approximately 1124 property owners in an age-restricted residential development in Lakewood. The Fairways

development is adjacent to four contiguous lots comprising approximately 100 acres on which is located the Eagle Ridge golf course. GDMS Holdings, LLC (GDMS), the owner of the golf course property, intends to develop the parcels with a high-density, non-age-restricted, residential and commercial development.

In 1985, the Legislature enacted the State Planning Act, N.J.S.A. 52:18A-196 to -207, which created the SPC and authorized it to adopt and revise the State Plan and "[c]oordinate planning activities and establish Statewide planning objectives . . . ." N.J.S.A. 52:18A-200(f). The State Plan is meant to guide "growth, development, renewal, and conservation" through coordinated land-use planning. N.J.S.A. 52:18A-199(a). Under the voluntary plan endorsement process, a municipality may petition the SPC to accept the municipality's planning boundaries. N.J.A.C. 5:85-7.3. Plan endorsement is a regulatory process that includes public notice, public hearings, meetings, and comment periods. N.J.A.C. 5:85-7.1 to -7.19.

In 1993, the Legislature amended the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -51, to require DEP to adopt regulations for determining impervious cover limits and vegetative cover percentages for sites in coastal development areas designated as a CAFRA center, core, node, coastal

planning area, coastal fringe area, or coastal center. The CAFRA amendments require DEP to closely coordinate its regulatory authority with the State Plan.

In December 2005, Lakewood submitted to SPC for endorsement a development plan designating CAFRA centers, cores, nodes, and other planning areas in the township. The plan reflected new and changed boundaries for the various CAFRA designated areas. At the time of Lakewood's submission, the golf course property was in a coastal fringe area subject to a maximum five percent impervious coverage. See N.J.A.C. 7:7-13.17, Table H. Near the conclusion of the review process, Lakewood changed the boundaries in the plan to put a portion of the golf course property in a CAFRA suburban planning area with an impervious cover limit of thirty percent, and a portion of the golf course property in a CAFRA node with an impervious cover limit of eighty percent. Ibid. These changes allowed for denser development of the golf course property.

SPC endorsed Lakewood's plan with the change in the golf course property's designation effective December 7, 2017. SPC published notice of its endorsement of the revised Lakewood boundaries in the New Jersey Register, 50 N.J.R. 681(b) (Jan. 16, 2018), and amended the State Plan map to reflect the township's new CAFRA area designation boundaries.

A-2980-18

In accordance with its Coastal Zone Management Rules, N.J.A.C. 7:7-11 to -29.10, DEP initiated review of the CAFRA designation boundaries endorsed by the SPC for Lakewood to determine whether they were consistent with the purposes of CAFRA. The DEP may reject a boundary if "it finds that accepting the [SPC] approved boundary would result in an unacceptable harm to the coastal ecosystem or the resources of the built or natural environment, or would otherwise be clearly inconsistent with the purposes of CAFRA" or its regulations. N.J.A.C. 7:7-13.16(b).

CAFRA boundaries endorsed by SPC and accepted by DEP are "operative for the purposes of applying the requirements for impervious cover and vegetative cover" for developments proposed in the affected CAFRA area. N.J.S.A. 7:7-13.16(a). DEP's intention to accept, reject, or modify revised boundaries approved by the SPC must be published in the New Jersey Register. N.J.A.C. 7:7-13.16(h).[1]

---

[1] On January 11, 2018, DEP issued a CAFRA individual permit, freshwater wetlands general permit, and a water quality certificate to GDMS (collectively, the Permit). The Permit authorizes construction of 1034 residential units, five community buildings, a clubhouse, retail buildings, parking, internal roadways, stormwater management facilities, and other improvements on the golf course property. The Permit also authorizes filling 14,941 square feet (0.34 acres) of isolated intermediate value freshwater wetlands and requires GDMS to record conservation restrictions on 1.94 acres of forested area to meet vegetation cover

A-2980-18

On April 16, 2018, DEP published notice that it had rejected the SPC's endorsement of the new State Plan map for Lakewood. 50 N.J.R. 1172(a) (Apr. 16, 2018). The DEP found that the map's changes included "the refinement of the Suburban Planning Area limits to more closely align with the provision of sewage collection systems and the extent of developed parcels . . . ." Ibid. In addition, DEP found the changes expanded the identification of environmentally sensitive lands and waters by 2975 acres, which would "help in the protection of Barnegat Bay and its contributory waters." Ibid. DEP found that

> the delineated community development boundaries approved by the [SPC] as part of the Township's Plan Endorsement Petition encompass existing and planned development and redevelopment, and recognize the extent of environmentally sensitive lands and waterways. The [new] designations concentrate the pattern of coastal residential, commercial, and resort development, and provide additional conservation protection to vulnerable coastal uplands and wetlands.
>
> [Ibid.]

However, DEP determined that Lakewood had "not adequately addressed its existing and projected needs for public potable water supplies." Ibid. DEP

---

requirements and other areas of critical habitat for a protected species. A Permit condition requires that no construction occur "unless and until [DEP] determines to accept the [SPC's] formally approved new and/or changed Planning Area boundaries and/or node boundary for the site, and the [SPC] amendment(s) are operative."

noted that the township's Municipal Utilities Authority (MUA) "is unable to provide service to new projects seeking CAFRA project approval in [its] service area and does not have provisions in place to ensure adequate public water supplies to accommodate the projected growth envisioned by the Township." Ibid. As the DEP explained,

> [t]he Lakewood Regional Center, Core, Node, and changed State Plan Policy Map designations would be consistent with CAFRA and [the regulations promulgated thereunder], particularly the CAFRA decision-making process established at N.J.A.C. 7:7-1.4, if adequate water supply for current and projected growth was demonstrated.
>
> [Ibid.]

On February 4, 2019, after review of a revised water supply plan, and Lakewood's responses to its comments, DEP formally accepted the SPC's CAFRA development area boundary changes for Lakewood. 51 N.J.R. 171(a) (Feb. 4, 2019). The DEP determined that

> [b]ased upon review of the . . . [p]lan, the Township's clarifications, and the Lakewood Township MUA's entering into a contract to purchase additional water . . . Lakewood Township has evaluated the potential public water supply demand based on projected growth and has identified contractual and infrastructure improvements necessary to supply current potential demand.
>
> [Ibid.]

7

This appeal follows. Fairways raises the following arguments.

POINT I

THE AMENDMENT TO THE STATE PLAN POLICY MAP IS INVALID AND INAPPROPRIATELY ISSUED.

POINT II

THE CHANGES TO THE STATE PLAN POLICY MAP ARE INAPPROPRIATELY ISSUED BY THE SPC DUE TO FINANCIAL CONFLICTS OF INTEREST BY THE TOWNSHIP OFFICIAL WHO ADVOCATED FOR THE CHANGE.

POINT III

[DEP] ERRED IN FAILING TO COORDINATE WITH THE SPC REGARDING CHANGES TO THE STATE PLAN POLICY MAP.

POINT IV

THE CHANGES TO THE STATE PLAN POLICY MAP VIOLATE THE [MUNICIPAL LAND USE LAW (MLUL)] AND THE [DEP] ERRED IN FAILING TO CONSIDER THE OVERRIDING PROTECTIONS OF THE MLUL FOR OPEN SPACE IN A PLANNED DEVELOPMENT.

POINT V

THE [DEP] IS OBLIGATED TO TURN SQUARE CORNERS.

A-2980-18

DEP argues that Fairways's appeal is limited to DEP's acceptance of the SPC's endorsement of the State Plan map for Lakewood because Fairways did not file an appeal from the SPC's endorsement of the map. As a result, DEP argues, this court lacks jurisdiction to consider Fairways's challenges to the process that resulted in SCP endorsing the map and the substantive basis for SPC's endorsement.

II.

We first address the scope of Fairways's appeal. SPC's January 16, 2018 endorsement of the changes to the State Plan map for Lakewood was a final agency decision. N.J.A.C. 5:85-7.19(a). Fairways had the option of appealing that decision to this court within forty-five days. R. 2:4-1(b). It did not do so.

DEP's February 4, 2019 final agency decision, which is the only agency decision issued within forty-five days of the filing of Fairways's notice of appeal, concerns only DEP's acceptance of the SPC's endorsement of changes to the State Plan map for Lakewood. Fairways cannot assert a time-barred challenge to the procedural and substantive basis of the SPC endorsement of the new map through its appeal of DEP's final agency decision. See Dep't of Law & Pub. Safety v. Contemporary Cmtys., 337 N.J. Super. 177, 179 (App. Div.

9

2001). We do not, therefore, consider Fairways's procedural and substantive challenges to SPC's endorsement of the Lakewood map.

III.

With respect to the DEP's February 9, 2019 final agency decision, a "strong presumption of reasonableness attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

A-2980-18

We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue . . . ." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We will, however, generally "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420 (2009) (quoting Richardson v. Bd. of Trs., 192 N.J. 189, 196 (2007)). Substantial deference must be extended to an agency's interpretation of its own regulations, particularly on technical matters within the agency's expertise. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004).

The record demonstrates that DEP carefully considered the revised State Plan map for Lakewood and undertook the substantive analysis required by CAFRA and its regulations. In its initial review of the revised map, DEP determined that its changes are consistent with CAFRA, recognize environmentally sensitive lands and waterways, concentrate development patterns, and provide additional conservation protection to vulnerable coastal uplands and wetlands. While DEP initially rejected the revised map, Lakewood subsequently addressed DEP's concerns about the township's water supply plan to adequately account for present and expected needs for public potable water.

We are not persuaded by Fairways's arguments that DEP's decision is invalid because DEP failed to consider the MLUL, the purported open space designation of the golf course property, or the alleged conflict of interest of a member of the township's governing body. Claims of this nature are outside of the statutory authority of the DEP when it considers whether to approve the SPC's endorsement of a State Plan map. The record indicates that Fairways raises these and other claims in an action in lieu of prerogative writ it filed in the Law Division challenging municipal approval of the development of the golf course property and seeking to enforce what Fairways alleges to be the open space designation of those parcels.

To the extent we have not addressed any of Fairways's remaining arguments we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2980-18