**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0835-20

DEPARTMENT OF EDUCATION,

    Petitioner-Respondent,

v.

EMMANUEL CAPERS,

    Respondent-Appellant.

_____

Submitted March 9, 2022 – Decided September 2, 2022

Before Judges Gooden Brown and Gummer.

On appeal from the New Jersey Commissioner of Education, Docket No. 3-3/20A.

Whipple Azzarello, LLC, attorneys for appellant (John C. Whipple, of counsel and on the briefs; William J. Munoz, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Commissioner of Education (Sookie Bae-Park, Assistant Attorney General, of counsel; Sadia Ahsanuddin, Deputy Attorney General, on the brief).

PER CURIAM

Emmanuel Capers, an elected member of the Paterson School Board (Board), appeals from the October 20, 2020 final agency decision of the Interim Commissioner of Education for the Department of Education (Commissioner), which affirmed the March 17, 2020 decision of the School Ethics Commission (SEC). The SEC concluded that Capers violated the School Ethics Act (Act), N.J.S.A. 18A:12-21 to -34, by attending an all-expenses-paid conference offered by a potential vendor of the Paterson School District (District). Based on its conclusion that Capers had violated various subsections of the Act, the SEC imposed the penalty of removal.[1] The Commissioner upheld the violations but rejected the penalty and imposed a six-month suspension instead. We affirm.

## I.

We derive the following facts from the record, which, with limited exceptions, are uncontroverted. Capers served on the Board's Curriculum Committee during the 2017-18 school term. His role included "investigat[ing], learn[ing] and enhanc[ing] the educational [c]urriculum" for the District. In the summer of 2017, Capers learned about a company called "Woz U" while he was volunteering at a camp for disadvantaged youth. Capers "exchanged contact

---

[1] The SEC may recommend a penalty of reprimand, censure, suspension, or removal from the Board. N.J.S.A. 18A:12-29(c).

A-0835-20

information" with Billy Gardner, the Woz U representative, and later "told members of the Curriculum Committee about Woz U's services," which included "free coding courses for juniors and seniors." Capers also provided the Board with Gardner's contact information.

On January 31, 2018, Gardner and other Woz U representatives "provided a coding and drone program demonstration" for members of the Board and District staff at the "central offices of the . . . District." The staff members in attendance included William Gaurlich, a social studies teacher; Eric Crespo, the "Associate Chief Academic Officer [who] oversaw program content and materials"; Joann Tsimpedes, the "Assistant Superintendent of Academic and Special Services"; and Jose Correa, the Director of Instructional Technology. Gardner's marketing presentation demonstrated both free programs and cost-based programs.

At the end of the presentation, Gardner mentioned that there were four all expenses-paid spots available at an upcoming conference in Arizona at the Scottsdale Plaza Resort, which would be funded by a Woz U scholarship valued at "$2,455." Subsequently, Gardner offered the spots to Correa, Crespo, Gaurlich, and Capers. Eileen Shaffer, the District's Superintendent, instructed Crespo and Correa, both "full-time employee[s] of the . . . District," to decline

"the trip because . . . [Woz U was] a potential vendor," and "[t]he legal department" thought "there might be a conflict." Shaffer also told Correa that "Board members should follow the same protocol." Additionally, Shaffer "spoke to Capers and recommended that he not go . . . because Woz U [was a potential] vendor." Ultimately, "[e]veryone except . . . Capers declined the trip." When Correa told Capers he (Correa) was not going, Capers responded that he (Capers) was going, and if a Board vote came up on Woz U, he would recuse himself.[2]

Capers attended the conference from February 20 to 23, 2018. Upon learning of his attendance, Shaffer asked James Smith, the Executive Director of Security and Internal Investigation for the District, to conduct an investigation to determine whether Capers's trip was "unauthorized." Based on his investigation, Smith determined there was no board resolution approving Capers's trip. After speaking with Correa, Crespo, Gaurlich, and others, Smith also determined that "Capers was advised by . . . Correa and Board Secretary Cheryl Williams that he wasn't authorized to go [on the trip] as per . . . Shaffer's instructions." After completing his investigation, Smith "forwarded [his] report

---

[2] In September 2018, the Board voted to implement Woz U's free programs. Capers recused himself from the vote.

to . . . Shaffer" and others, who then sent it to "the State Ethics Office, the Commissioner of Education, and other [B]oard members."

On July 24, 2018, Smith filed a formal complaint with the SEC alleging Capers violated subsections (a), (c), (e), and (f) of N.J.S.A. 18A:12-24.1, which delineates a Code of Ethics (Code) for School Board Members. Specifically, under N.J.S.A. 18A:12-24.1(a), School Board Members are required to "uphold and enforce all laws, rules and regulations of the State Board of Education, and court orders pertaining to schools." N.J.S.A. 18A:12-24.1(a) also specifies that "[d]esired changes shall be brought about only through legal and ethical procedures."

Under N.J.S.A. 18A:12-24.1(c), School Board Members must "confine . . . board action to policy making, planning, and appraisal," and "help to frame policies and plans only after the board has consulted those who will be affected by them." Under N.J.S.A. 18A:12-24.1(e), School Board Members must "recognize that authority rests with the board of education" and refrain from making "personal promises" or taking "any private action that may compromise the board." Under N.J.S.A. 18A:12-24.1(f), School Board Members must "refuse to surrender [their] independent judgment to special

interest or partisan political groups or to use the schools for personal gain or for the gain of friends."

Capers moved to dismiss the alleged violations, arguing that the complaint was frivolous. On October 30, 2018, the SEC granted Capers's motion to dismiss the subsection (a) violation only, but denied the motion as to the other subsections. On November 21, 2018, the SEC transmitted the matter to the Office of Administrative Law (OAL) as a contested case. Following hearings conducted on October 3, November 4, and December 5, 2019, an administrative law judge (ALJ) issued an initial decision on December 23, 2019, detailing her findings of fact and legal conclusions. In the decision, after considering the testimony of Crespo, Tsimpedes, Gaurlich, Correa, Smith, Shaffer, and Oshin Castillo, a fellow Board member, as well as documentary evidence, the ALJ determined Capers did not violate the Code and denied the petition.[3]

First, the ALJ found no violation of N.J.S.A. 18A:12-24.1(c) because Capers had brought Woz U to the District's attention ostensibly because Woz U had a program "that would offer free coding services to high school juniors and seniors," which was "consistent" with being a member of the Board's Curriculum Committee and did not constitute "framing policy or plans." Regarding N.J.S.A.

---

[3] Capers did not testify.

18A:12-24.1(e), the ALJ noted, "[t]here was no testimony or evidence that Capers made any personal promises to anyone connected to Woz U." According to the ALJ, Capers's attendance at the conference "could have been done to gain a clearer understanding of the programs that Woz U offered," and "did not compromise the Board."

Additionally, the ALJ pointed out that "Woz U was not a vendor of the Board" at the time of the conference, and "[t]here was no testimony or evidence that Capers attempted to sway the other Board members to vote on a resolution to have Woz U become a vendor for the District." The ALJ noted that when a vote was held to determine whether the District should contract with Woz U, Capers recused himself. Furthermore, "Capers was not informed . . . that a resolution was necessary for him to attend the [conference]."

Finally, the ALJ found no violation of N.J.S.A. 18A:12-24.1(f) because although "Capers knew Gardner," there "was no evidence or documentation that Capers had a prior business relationship with Woz U or anyone related to Woz U." The ALJ determined that simply going to the conference and recusing himself from the vote to determine whether Woz U would become a vendor was not sufficient evidence "to show that Capers surrendered his independent judgement to anyone." The ALJ explained that although Capers was "the only

A-0835-20

one from [the District]" who went to the conference, there was "no evidence that Capers used the school to get the all-expense[s]-paid [trip]."

Thereafter, the matter was transferred to the SEC for a determination on whether a violation of the Act occurred and, if so, a penalty recommendation. On March 17, 2020, the SEC voted to adopt the ALJ's findings of fact but reject the legal conclusion that Capers did not violate the Code provisions. See Hayes v. Bd. of Trs. of Police & Firemen's Ret. Sys., 421 N.J. Super. 43, 51–52 (App. Div. 2011) (holding an "agency need not defer to an ALJ's legal conclusions," but deference is owed to factual findings). Based on its decision, the SEC recommended Capers "be removed from his position as a Board member." In support, the SEC relied on the enabling regulations to demonstrate that the evidence sufficed to sustain the violations. See N.J.A.C. 6A:28-6.4(a)(3); N.J.A.C. 6A:28-6.4(a)(5); N.J.A.C. 6A:28-6.4(a)(6).

The SEC concluded Capers "was overly involved in ensuring that the District used . . . program[s] offered by Woz U"; "had a 'relationship' with the representative from Woz U"; "vigorously lobbied for the courses/programs offered by Woz U to be implemented in the District"; and "recognized that his acceptance and attendance" at the conference "created a conflict requiring recusal." Additionally, the SEC determined Capers's "acceptance . . . and

attendance . . . [wa]s exacerbated" by his "blatant[] disregard[]" of Shaffer's recommendation not to attend the conference.

Specifically, the SEC found Capers violated N.J.S.A. 18A:12-24.1(c) because even if his action in bringing a coding curriculum program to the District's attention was "'consistent with being on the [C]urriculum [C]ommittee,' his ensuing advocacy for the potential vendor, especially when [Capers] had a pre-existing - yet not completely defined - relationship with a representative of the company [was] problematic." The SEC explained:

> [B]y requesting that a course/program be implemented before it was fully analyzed by the District's administration; requesting that a course/program be presented to the Board before the Department of Academic Services believed it was appropriate to do so; and accepting and attending an all-expense[s]-paid-[conference] in Arizona with the foresight that such acceptance and attendance would preclude him from being involved in any vote(s) regarding Woz U, [Capers] took actions unrelated to his duties and responsibilities as a Board member.

The SEC also found Capers violated N.J.S.A. 18A:12-24.1(e) because his conduct

> constituted action beyond the scope of his duties as a Board member. Moreover, [Capers's] actions could have compromised the Board's ability to contract with Woz U for free and/or cost-based programs, services, or courses, and could have compromised the public's opinion about the ethics and integrity of the Board

9

when it comes to the appropriateness of accepting gifts from vendors, potential vendors, or from any entity which may provide or offer to provide goods or services to the Board. Because [Capers] accepted and attended the all-expense[s]-paid [conference] in his capacity as a Board member, it could appear as if the Board had authorized or sanctioned his attendance when, in fact, the chief school administrator specifically recommended that [he] not attend.

Finally, the SEC determined Capers violated N.J.S.A. 18A:12-24.1(f) by "us[ing] his position as a member of the Board to acquire a benefit for himself, namely a 'free' trip to Arizona," from "a potential vendor." In support, the SEC noted that the "offer was extended . . . because of [Capers's] membership on the Board," and Capers "accepted and attended" "in his capacity as a member and representative of the Board."

Thereafter, Capers appealed to the Commissioner. For substantially the same reasons as those cited by the SEC, in an October 23, 2020 decision, the Commissioner affirmed the SEC's conclusion that Capers violated the Code provisions, finding that the SEC's "decision [wa]s supported by sufficient credible evidence, and that [Capers] failed to establish that the decision [wa]s arbitrary, capricious or contrary to law." However, the Commissioner determined that "removing [Capers] from the [B]oard [wa]s an unduly harsh penalty for the proven violations," and that a less harsh penalty would still deter

Board members from accepting gifts from vendors. Accordingly, the Commissioner imposed a six-month suspension and this appeal followed.

## II.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Ibid. (second alteration in original) (quoting Henry, 81 N.J. at 579-80).

As our Supreme Court has instructed:

> In determining whether agency action is arbitrary, capricious, or unreasonable, [we] must examine:
>
> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

11

The burden of proving that an agency action is arbitrary, capricious, or unreasonable is on the challenger. Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). Thus, we "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. at 194 (quoting Carter, 191 N.J. at 483). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (second alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State Dep't of Transp.,

12

338 N.J. Super. 28, 32 (App. Div. 2001)). To be sure, "[s]tatutory and regulatory construction is a purely legal issue subject to de novo review." Ibid.

### III.

Applying the above standards, we discern no reason to disturb the Commissioner's decision. We begin by providing some background on the Code for context. The Code is part of the School Ethics Act, N.J.S.A. 18A:12-21 to -34, enacted in 1991 by the Legislature, which specifically found it was "essential that the conduct of members of local boards of education . . . hold the respect and confidence of the people. These board members . . . must avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated." N.J.S.A. 18A:12-22(a). The Legislature further determined that "[t]o ensure and preserve public confidence, school board members . . . should have the benefit of specific standards to guide their conduct and of some disciplinary mechanism to ensure the uniform maintenance of those standards among them." N.J.S.A. 18A:12-22(b). To that end, the Code sets forth specific standards for school board members to follow. N.J.S.A. 18A:12-24.1.

Capers argues his "actions cannot have violated subsection (c)" of the Code because "[t]here is no evidence that in accepting the scholarship he was acting . . . on behalf of the Board, or in his official capacity as a Board member." We disagree.

Pursuant to N.J.A.C. 6A:28-6.4(a)(3):

> Factual evidence of a violation of N.J.S.A. 18A:12-24.1(c) shall include evidence that the [board member] took board action to effectuate policies and plans without consulting those affected by such policies and plans, <u>or took action that was unrelated to the [board member's] duty</u> to:
>
> > (i) develop the general rules and principles that guide the management of the school district or charter school;
> >
> > (ii) formulate the programs and methods to effectuate the goals of the school district or charter school; or
> >
> > (iii) ascertain the value or liability of a policy.
>
> [(emphasis added).]

In considering the violation, the Commissioner found that Capers took action that was unrelated to his duty as a Board member as defined in N.J.A.C. 6A:28-6.4(a)(3). By accepting the trip, when it was not necessary as a "means

14

of learning about [Woz U's] programs," and no other District personnel found it necessary to accept the trip to better understand the programs being offered, Capers violated N.J.S.A. 18A:12-24.1(c). Furthermore, as the Commissioner explained, "[r]esearch into a program that was appropriate and consistent with [Capers's] position on the [C]urriculum [C]ommittee would not result in his being unable to vote on the [D]istrict's implementation of that program." Thus, the Commissioner's finding that Capers violated N.J.S.A. 18A:12-24.1(c) is supported by sufficient credible evidence in the record.

Next, Capers argues "[m]aking the District aware of Woz U[,] . . . encouraging the District to investigate Woz U's free offerings," and accepting the all-expenses- paid trip "was not 'board action,' but instead 'private action,'" and there is "no evidence that [his] actions may have compromised the Board" in violation of N.J.S.A. 18A:12-24.1(e).

Under N.J.A.C. 6A:28-6.4(a)(5), "[f]actual evidence of a violation of N.J.S.A. 18A:12-24.1(e) shall include evidence that the [board member] made personal promises or took action beyond the scope of his or her duties such that, by its nature, had the potential to compromise the board." N.J.A.C. 6A:28-6.4(a)(5) fully reflects the Legislature's determination that any potential for harm is sufficient. Contrary to Capers's contention, the Commissioner's

determination that Capers's action in unilaterally accepting an all-expenses-paid trip "went beyond the scope of the duties and responsibilities" of a Board member and "had the potential to compromise the [B]oard," in violation of N.J.S.A. 18A:12-24.1(e), is clearly supported by ample evidence in the record.

Finally, Capers contends because Woz U extended the offer to other Board members and certain District employees, "[t]here is simply no evidence . . . that [he] 'used the schools' for personal gain," or that he "caused or influenced the schools to take any action to obtain this scholarship" in violation of N.J.S.A. 18A:12-24.1(f). We disagree.

Pursuant to N.J.A.C. 6A:28-6.4(a)(6):

> Factual evidence of a violation of N.J.S.A. 18A:12-24.1(f) shall include evidence that the [board member] took action on behalf of, or at the request of, a special interest group or persons organized and voluntarily united in opinion and who adhere to a particular political party or cause; or evidence that the respondent(s) used the schools in order to acquire some benefit for the [board member], a member of his or her immediate family or a friend.

In addressing the violation, the Commissioner observed that "[t]he trip was offered to board members and school personnel, and thus was clearly related to those individuals' positions relative to the schools." Additionally, given the Legislative intent behind the Code, Capers's acceptance of the benefit could

16

create a "a justifiable impression among the public that such trust is being violated." N.J.S.A. 18A:12-22(a). Thus, the Commissioner's finding that Capers violated N.J.S.A. 18A:12-24.1(f) is supported by credible evidence in the record.

In sum, the Commissioner's affirmance of the SEC's finding that Capers violated the Code provisions is supported by sufficient credible evidence in the record and is neither arbitrary, capricious, nor unreasonable. Given our deferential standard of review, we discern no basis to intervene.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0835-20