**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2297-19

DEPARTMENT OF
COMMUNITY AFFAIRS,
SANDY RECOVERY DIVISION,

     Petitioner-Respondent,

v.

ANTHONY MELIA,

     Respondent-Appellant.

_____

Argued December 8, 2021 – Decided March 11, 2022

Before Judges Gilson and Gummer.

On appeal from the New Jersey Department of Community Affairs, Docket No. CAF 11786-18.

Joshua I. Savitz argued the cause for appellant (Weiner Law Group, LLP, attorneys; Joshua I. Savitz, of counsel and on the briefs).

Eric A. Reid, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Eric A. Reid, on the brief).

PER CURIAM

Anthony Melia appeals from the final decision of the Department of Community Affairs (Department), which determined that Melia had to refund grant monies he received from the Department to repair a house damaged by Superstorm Sandy because the house was not Melia's primary residence. Melia contends that the Department's decision was arbitrary, capricious, and unreasonable, and was based on an improper shifting of the burden to prove Melia's eligibility to receive the grants. We reject those arguments and affirm.

I.

On October 29, 2012, Superstorm Sandy struck New Jersey. In response to the damage caused by the storm, the United States Department of Housing and Urban Development (HUD), through the Community Development Block Grant-Disaster Recovery Program, provided funds to the Department for a variety of programs designed to assist affected New Jersey residents who met the eligibility requirements.

The Department established several programs, including the Resettlement program (RS program) and the Reconstruction, Rehabilitation, Elevation, and Mitigation program (RREM program). The RS program provided $10,000 grants for non-construction purposes to encourage eligible homeowners to

remain in the county in which they lived at the time of the storm. The RREM program provided grants of up to $150,000 to assist eligible homeowners with construction, rehabilitation, elevation, and other mitigation efforts to restore their residences.

To be eligible for grants under either program, the damaged residence must have been the applicant's primary residence at the time of the storm. The Department published the eligibility criteria for the grants. The published criteria explained that for both programs the Department preferred that applicants verify their primary residence through multiple data sources and documents. The preferred verification required documents showing (1) ownership of the property; (2) Federal Emergency Management Agency (FEMA) records showing the applicant reported to FEMA that the property was the primary residence at the time of the storm; and (3) a New Jersey driver's license or non-driver identification card showing the damaged residence as the address. See RS program policy at 4.2 and RREM policy at 3.4.

If primary residence could not be established through the preferred documentation, an applicant to the RS program could provide two of three documents: a government-issued document sent to the damaged residence; a

voter registration card; or insurance documentation showing "that the damaged address is the applicant's primary residence."  RS program policy at 4.3.

An applicant seeking a grant under the RREM program could establish primary residence by providing federal tax return documents showing the damaged residence is his or her primary residence, as well as a voter registration card showing the damaged residence.  RREM program policy at 3.4.  The policies and procedures for both programs also stated that the Department might consider other documentation to prove primary residence on a case-by-case basis.

Melia owned two homes at the time of Superstorm Sandy:  a home he inherited from his father located at 71 Glenview Road, Nutley (the Nutley property), and a home located at 71 West Granada Drive, Brick (the Brick property).  Melia purchased the Brick property in April 2012.  On October 29, 2012, Superstorm Sandy damaged Melia's Brick property.

In June 2013, Melia submitted applications for grants under both the RS program and the RREM program.  In July 2013 and February 2014, Melia executed grant agreements and promissory notes for grants under both programs. In the grant agreements, Melia certified that the Brick property was his primary residence at the time of Superstorm Sandy.

A-2297-19

The Department approved Melia's application under both programs. In 2013, Melia received $10,000 from the RS program. The RS program's grant agreement and promissory note provided that the grantee would be obligated to repay the entire grant amount if the grantee failed to maintain a qualifying primary residence. In 2014, Melia received two RREM program grant checks totaling $133,519.99. The RREM program's grant agreement stated that false or materially misleading representations in either the grant agreement or application would constitute an event of default, and the remedies for a default include recovery of the grant.

In March 2016, the Department sent Melia a letter demanding repayment of the monies under both grant programs because it had determined that the Brick property was not Melia's primary residence. Melia administratively appealed that determination, and the Department transferred the matter to the Office of Administrative Law as a contested case.

In 2019, an Administrative Law Judge (ALJ) heard testimony and received evidence on three days: March 8, 2019, March 11, 2019, and July 22, 2019. The Department relied on documentation, principally consisting of Melia's driver's license, voter registration, tax returns, and mortgage documents. Melia's driver's license showed that his primary residence was the Nutley

A-2297-19

property, and on November 12, 2012, he changed his driver's license so that it listed his Brick property. Melia's voter registration listed the Nutley property as his primary residence at the time of Superstorm Sandy, and he changed his voter registration on December 20, 2012, to list the Brick property. The evidence at the hearing showed that Melia voted in Nutley in the November 2012 election. Melia's federal 2012 tax return, which was filed in April 2016, identified the Nutley property as his primary residence.

Melia also executed several mortgages that listed the Nutley property as his primary residence. When Melia purchased the Brick property, he obtained a mortgage and executed a "second home rider" in which he agreed that he would occupy the Brick property only as his second home. Melia also executed a separate mortgage in March 2013 on the Nutley property. In that mortgage Melia stated he would occupy the Nutley property as his primary residence.

At the hearing, Melia contended that he used the Brick property as his primary residence. He testified that he had begun living at the Brick property in April 2012. He explained that he had failed to change his driver's license and voter registration because he did not get around to it. Concerning the mortgage documents, Melia contended that he had not carefully reviewed those documents and instead had relied on his attorney. Melia also provided testimony from ten

6

neighbors and friends, all of whom testified that, based on their observations, Melia used the Brick property as his primary residence after he had purchased it in April 2012.

On September 26, 2019, the ALJ issued an initial decision upholding the Department's determination that Melia was not eligible for the grants under either program. The ALJ relied on the driver's license, voter registration, tax returns, and mortgages to find that Melia had not used the Brick property as his primary residence at the time of Superstorm Sandy. The ALJ determined that the documents provided by Melia were not sufficient to establish that the Brick property was his primary residence. The ALJ also rejected the testimony of Melia's friends and neighbors, reasoning that they had offered only subjective observations and "no direct objective evidence" that Melia's primary residence was the Brick property at the time of the storm.

Melia administratively appealed the ALJ's initial determination to the Department. In connection with his exceptions, Melia filed a motion to reopen the record and submit a December 18, 2019 FEMA decision finding that Melia was not required to return the FEMA funds because the Brick property was his primary residence.

A-2297-19

On December 27, 2019, the Department, through its commissioner, issued a final agency decision adopting the ALJ's initial decision and holding that Melia must refund the grants he had received under the RS and RREM programs. The Department reasoned that documentary evidence is the preferred method for establishing primary residence under both programs. Accordingly, the Department found that the ALJ had properly focused on the documentary evidence. The Department then addressed and analyzed Melia's various arguments and rejected them. Finally, the Department acknowledged the FEMA determination but found that it was not "controlling or persuasive" because the FEMA analysis differed significantly from the State programs' focus on the required documentation.

II.

On this appeal, Melia contends that the Department's decision should be reversed because (1) it was arbitrary, capricious, unreasonable, and lacked a factual basis; and (2) it relied on an erroneous burden of proof. We are not persuaded by either of these arguments.

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick

8

Coll. LPN-RN Bridge Program, 225 N.J. 533, 541 (2016). A "strong presumption of reasonableness attaches" to an agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). We will not "disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

Moreover, we do not second-guess or substitute our judgment for that of the agency. Accordingly, we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). Instead, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility" and, therefore, accept the findings of fact "when supported by adequate, substantial and credible evidence." Ibid. (first quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); and then quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Nevertheless, we are not bound by an agency's "interpretation of a statute or its determination of a strictly

legal issue." In re Carter, 191 N.J. 474, 483 (2007) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

We discern no basis for disturbing the Department's determination that Melia was not eligible for grants under the RS program or the RREM program. The Department adopted the fact findings made by the ALJ. The ALJ, in turn, found that Melia had not proven that the Brick property was his primary residence based on his driver's license, voter registration, tax returns and mortgages. That determination is supported by substantial credible evidence. The Department and the ALJ also considered but rejected Melia's testimony and the testimony of his friends and neighbors. In that regard, the Department adopted the ALJ's reasoning in finding that their testimony was not objective evidence of his primary residence. We discern no basis for rejecting that finding, which essentially is a credibility determination.

Melia further argues that the Department should have placed greater weight on the FEMA decision that concluded, largely based on witness testimony, that the Brick property was his primary residence. This is not the first time this court has been asked to discard the document-focused approach used by the Department to determine a property owner's "primary residence." See N.J. Dep't of Cmty. Affs., Sandy Recovery Div. v. Maione, 456 N.J. Super.

10

146, 155-56 (App. Div. 2018). In <u>Maione</u>, this court declined to hold that the "primary residence" question should be resolved by relying on the common-law concept of "domicile." <u>Id.</u> at 155. We rejected that test in part because it would generate extensive litigation, diverting resources intended for disaster relief to "pay lawyers" and not "carpenters, masons, and plumbers." <u>Id.</u> at 156. The Department's "straightforward approach," on the other hand, informs grant applicants of the "list of specific documents" that the Department uses to make "critical eligibility determinations." <u>Id.</u> at 155. That approach assists homeowners through an uncomplicated process that serves the important "public policy underpinning these relief programs." <u>Ibid.</u>

Following that same logic, we decline to hold that the Department should have used a different test here. Instead, the Department's straightforward approach is in line with both public policy and the clear requirements of both programs' policies.

Melia also raises a contention concerning the burden of proof. He argues that it was the Department's burden to show substantial credible evidence that he should return the grant monies. He then contends that the Department and ALJ incorrectly focused on his failure to establish that the Brick property was his primary residence on the day of Superstorm Sandy.

A-2297-19

The Department concedes that it must demonstrate that Melia does not qualify under the grant-program rules. It points out, however, the grant programs' policies and procedures clearly state that the applicant must establish that the damaged property was his or her primary residence at the time that Superstorm Sandy struck. The ALJ and the Department evaluated all the evidence presented and found that Melia was not eligible for grants under either program. We discern no improper shifting of a burden that would warrant a reversal of the Department's final agency determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2297-19