# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3517-20

IN THE MATTER OF THE
SUSPENSION OR REVOCATION
OF THE LICENSE OF

RAED A. JITAN, M.D.
LICENSE NO.: 25MA07843100

TO PRACTICE MEDICINE AND
SURGERY IN THE STATE OF
NEW JERSEY

_____

Argued October 6, 2022 – Decided October 13, 2022

Before Judges Haas and DeAlmeida.

On appeal from the New Jersey State Board of Medical Examiners, Division of Consumer Affairs, Department of Law and Public Safety.

Greg S. Gargulinski argued the cause for appellant Raed A. Jitan, M.D. (Rudnick, Addonizio, Pappa & Casazza, PC, attorneys; Michael J. Pappa and Greg S. Gargulinski, on the brief).

Bindi Merchant, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Medical Examiners (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney

General, of counsel; Nisha S. Lakhani, Deputy
Attorney General, on the brief).

PER CURIAM

Appellant Raed Jitan, M.D. appeals from the August 2, 2021 final agency decision of the Board of Medical Examiners suspending his medical license for eight years after he pled guilty to a crime of moral turpitude.[1]  On appeal, Jitan admits his conduct, but challenges the length of his suspension.  We affirm.

The Board conducted a multi-day hearing, and issued a comprehensive thirty-two page written decision.  The history of this litigation and the facts relevant to this appeal are set forth at length in that decision.  Therefore, we need only summarize the most salient facts here.

Jitan worked as a nuclear cardiologist for the thirty-nine years prior to his suspension.  During that period, he had no disciplinary record.

However, on December 19, 2019, Jitan pled guilty to violating N.J.S.A. 2C:14-9(b)[2] after the police discovered he had been surreptitiously taking

---

[1]  The Board ordered Jitan to serve a minimum of five of the eight years as an "active suspension."  The Board also ordered Jitan to pay $10,000 in civil penalties and $27,636 in attorneys' fees.

[2]  This statute states that a person commits a crime of the third-degree if he photographs or videotapes "the image of another person whose intimate parts are exposed . . . without that person's consent and under circumstances in which a reasonable person would not expect to be observed."

photographs and videotaping his daughter while she was naked in her bedroom and bathroom. The State's lead detective testified that Jitan began photographing his teenage daughter without her knowledge or consent in 2011 and continued doing so for the next five years. The police found over fifty recording devices in Jitan's master bedroom during a search of his home. It took the detective two years to review all of the images found on these devices. The detective testified he recovered over 1 billion photographs and approximately 16,000 videos of Jitan's daughter with her intimate parts exposed.

In February 2020, the trial court sentenced defendant to two years of probation and ordered him to undergo a mental health evaluation. Thereafter, the Board filed a verified complaint against Jitan seeking the suspension or permanent revocation of his medical license under N.J.S.A. 45:1-21(f) because he had committed a crime of moral turpitude.

At the Board's hearing, Jitan admitted to liability and the scope of the hearing was therefore limited to a determination of the appropriate penalty. Jitan presented mitigating evidence including, among other things, a number of letters attesting to his character, letters from hospitals supporting him, and a mental health evaluation report.

3

Jitan also testified on his own behalf. He admitted setting up the recording devices, but claimed he did so because he was concerned his daughter was smoking marijuana in the home and he wanted to obtain evidence of this conduct. Jitan produced one photograph that he said depicted his daughter with four marijuana "joints" in her mouth. Jitan stated he did not use any of the videos for sexual gratification.

In response, the lead detective testified that he never observed Jitan's daughter using drugs or alcohol in any of the photographs and videos he reviewed. He also stated that information extracted from Jitan's devices showed that he made "numerous father/daughter incest Internet searches" during the five-year period he was recording his teenage daughter in various stages of undress.

Following the hearing, the Board issued its final decision suspending Jitan's license for eight years. The Board "found Dr. Jitan's conduct egregious" and that Jitan "demonstrate[d] a lack of regard for bodily dignity, privacy, confidentiality, and discretion." In so ruling, the Board determined that Jitan "lacked credibility" and that his testimony was "self-serving."

The Board rejected Jitan's claims that he only photographed and taped his daughter to obtain evidence of her drug use and that he had only "a limited lapse

4

in judgment." The Board noted that Jitan took over a billion photographs and 16,000 videos of his daughter and obviously knew these images contained footage of her with her intimate parts exposed. Yet, he continued to invade the child's privacy for five years. In addition, the Board found Jitan's internet browsing history established that his intent was not "fatherly concern for a wayward daughter."

Even if this were not the case, the Board concluded that "as a physician, Dr. Jitan should have been aware of less personally invasive clinical methods of detecting and monitoring drug and alcohol usage, such as urine or body hair testing." Yet, Jitan did not avail himself of these options and, instead, "repeatedly chose to videotape his daughter in places where a person has an expectation of privacy." This appeal followed.

On appeal, Jitan argues that "the Board's decision to suspend [his] medical license for eight . . . years due to a personal matter is unreasonable as it is shockingly inconsistent with fairness." Based on our review of the record and applicable law, we conclude that Jitan's contentions are without sufficient merit to warrant extensive discussion in a written opinion. See R. 2:11-3(e)(1)(D), (E). We affirm substantially for the reasons stated by the Board in its thorough written decision. We add the following comments.

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (stating that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant"). To that end, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

It is not our place to second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

A-3517-20

Additionally, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility[,]" and therefore accept their findings of fact "when supported by adequate, substantial and credible evidence[.]" Ibid. (first quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); and then quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)).

"[A]ppellate review of an agency's choice of sanction is [likewise] limited." In re License Issued to Zahl, 186 N.J. 341, 353 (2006). Thus, we "will modify a sanction 'only when necessary to bring the agency's action into conformity with its delegated authority.'" Ibid. (quoting In re Polk License Revocation, 90 N.J. 550, 578 (1982)). "[T]he test in reviewing administrative sanctions is 'whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Polk, 90 N.J. at 578 (quoting Pell v. Bd. of Educ., 34 N.Y.2d 222, 233 (1974)).

Applying these principles, we discern no basis for disturbing the Board's well-reasoned determination that Jitan should serve an eight-year suspension. Jitan committed an "egregious" crime of moral turpitude against his teenage daughter that transpired over a five-year period. As the Board found, his misconduct clearly raised questions about his ability to safely interact with patients in the future.

Pointing to a trio of unpublished opinions, Jitan argues that three other physicians who allegedly committed more serious offenses received lesser sanctions. This argument lacks merit. These opinions are not precedential, <u>see</u> <u>Rule</u> 1:36-3, and the three cases Jitan identifies certainly do not represent the vast universe of other lengthy license suspensions and revocations the Board has imposed in the many other disciplinary matters it has resolved over the years.

Jitan also argues that the Board should not have considered the detective's testimony concerning his internet search history. However, once Jitan claimed that his intent in taking a billion photographs and 16,000 videos of his daughter was solely to find evidence of the child's possible drug use, the State was entitled to present evidence challenging Jitan's credibility on this point.

In sum, Jitan's eight-year suspension does not shock our sense of fairness. <u>Polk</u>, 90 N.J. at 578. We therefore affirm the Board's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3517-20