**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2565-21

RITZ HOTEL SERVICES, LLC,

     Appellant,

v.

NEW JERSEY ECONOMIC
DEVELOPMENT AUTHORITY,

     Respondent.

_____

Submitted January 23, 2024 – Decided March 4, 2024

Before Judges Whipple and Enright.

On appeal from the New Jersey Economic Development Authority.

Murphy Schiller & Wilkes, LLP, attorneys for appellant (Thomas S. Dolan, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Gabriel I. Chacon, Assistant Attorney General, and Christopher M. Tattory, Deputy Attorney General, on the brief).

PER CURIAM

Ritz Hotel Services, LLC (Ritz) appeals from the New Jersey Economic Development Authority's (NJEDA or Board) March 9, 2022 final agency decision (FAD) denying its application for the Grow New Jersey Assistance Program (Program or Grow NJ). N.J.S.A. 34:1B-244. The Board found that Ritz could not demonstrate the tax credit would be a material factor in whether to operate in state as opposed to out of state. We affirm.

The NJEDA administers Grow NJ, a tax incentive enacted in 2011 to encourage economic development and preserve jobs in the state. N.J.S.A. 34:1B-244(a). Grow NJ grants tax credits to businesses based on jobs created or retained in New Jersey. N.J.S.A. 34:1B-246. Applicant businesses must demonstrate the tax credit will be a "material factor" in their decision to stay in the state, primarily by showing that moving out of state would be cheaper, but for the tax credit. N.J.S.A. 34:1B-244(a)(4).

To substantiate its material factor claim, applicants must provide a "full economic analysis" of its out-of-state and in-state location options. N.J.A.C. 19:31-18.3(a)(3)(iii). As part of the full economic analysis, applicants must complete a template "cost-benefit analysis" spreadsheet provided by NJEDA. In addition to the cost benefit analysis, applicants must provide lease agreements within the state; ownership documentation for out-of-state locations; a statement

on how the tax credit will affect the business's decision to remain or leave the state; and a certification that the documentation has been reviewed by the Chief Executive Officer of the company certifying the information is accurate and that "but for the Grow [NJ] award, the creation and/or retention of jobs would not occur."

The cost-benefit analysis compares one-time upfront costs (including building acquisition; building construction; building renovation; purchase of furniture; fixtures and equipment; and moving costs) and ongoing costs (including rental costs, real estate costs, utilities, building maintenance, and payroll) for both the in-state and out-of-state locations. NJEDA calculates ongoing costs by determining the difference between in-state and out-of-state costs using costs at a point-in-time (PIT), and then multiplying that difference for the duration of the ten-year Program term and the fifteen-year commitment duration (in which the business must remain in the State and comply with the Program requirements). To compare costs that span multiple years, the cost benefit analysis tool displays the ten-year and fifteen-year differential in current dollars (net present value). The NJEDA determines all ongoing costs utilizing the PIT methodology. The applicant must provide a copy of all documentation supporting the costs on the cost-benefit analysis.

Ritz is a commercial laundry provider serving hotels in Paterson, a Garden State Growth zone. Ritz applied for the Program in June 2019, as the tax credit would allow Ritz to renovate its existing location, instead of moving to an alternative, less expensive location under consideration in Suffern, New York. Ritz certified the tax credit was a material factor to remain in state. Ritz asserted the labor costs for remaining in New Jersey were its greatest expense due to the state's impending increase in the minimum wage in 2024. Additionally, Ritz argued staying in state would require an upgrade to its existing facility. As part of the application, Ritz also needed to provide documentation confirming a potential landlord would agree to Ritz's proposal for the alternative property. Ritz submitted two documents purporting to be lease proposals (also referred to as letters of intent or LOIs) as supporting documentation for the Suffern property. However, neither was ever signed by a landlord, and no landlords were listed.

The NJEDA rejected the application, stating Ritz failed to demonstrate the credits were a material factor to maintain or create the required minimum of new or retained full-time jobs, as required by N.J.S.A. 34:1B-244(a)(4). The NJEDA found, on all measures except one, New Jersey was the more costly option due

4

to a payroll differential. It also found the company did not provide an updated LOI, as requested, to confirm a potential landlord for the Suffern property.

Ritz administratively appealed to the NJEDA, challenging both the use of PIT methodology to compare labor costs and the lack of an updated LOI for the Suffern property. On March 9, 2022, the NJEDA's hearing officer, issued a report recommending the Board uphold the denial of Ritz's application. The hearing officer rejected Ritz's assertion that the NJEDA erroneously rejected its annual payroll projection because Ritz considered the increase in New Jersey's minimum wage to $15 per hour in 2024. Under the PIT methodology the NJEDA only considered current wages for retained employees and projected employees at one location compared to the same wages at the out-of-state site.

The hearing officer explained why NJEDA used PIT, stating

> "full economic analysis," is not defined in the statute or regulations . . . [NJ]EDA consistently employed PIT costs in its analyses—even to costs such as leases with step-ups built in—regardless of where the property was located.
>
> . . . .
>
> In explaining the PIT utilization . . . [NJ]EDA presumes, over time, data variances will tend to cancel out. For example, utilities, water, and various other costs, etc. cannot be reliably projected [ten] or [fifteen] years into the future. To account for this[, NJ]EDA

weighs these variables to be balanced out and not vary substantially in proportion over time.

In essence, the present "point in time" cost differentials are presumed more or less static into the future. This is also the case with the cost of labor. Ritz is correct that its payroll costs in New York will be less, at least for an indeterminate duration – and if [NJ]EDA were to depart from its past practice. Ritz is certainly aware that labor costs are not static – even in the face of legally mandated increases in wages as in the present instance. In 2016[,] Ritz left its own location in Brooklyn to seek paying less for labor in New Jersey after New York increased its minimum wage, which undermines the argument that a PIT wage comparison is arbitrary, capricious or unreasonable in the context of awarding tax credits for up to ten years.

On the same day, the Board issued its FAD concluding Ritz did not show how the tax credit would be a material factor for staying in state, because the PIT payroll differential was the only item making New Jersey more costly than the alternative location. The Board underscored support for the use of the PIT methodology, stating "[NJ]EDA's consistent employment of PIT in the statutorily required 'full economic analysis' cannot be determined to be '. . . in direct violation of its own rules and regulations.'" Additionally, the Board found Ritz's refusal to provide an updated LOI supported the determination the Program would not be a material factor in Ritz's location decision. This appeal followed.

6

"A strong presumption of reasonableness attaches to the actions of administrative agencies." In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993) (citing Campbell v. Dep't of Civil Service, 39 N.J. 556, 562 (1963)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007).

If the record contains substantial evidence to support the agency's findings, then deference controls even if we "would have reached a different result in the first instance." Id. at 28. It is the challenging party's burden to make the showing the decision is arbitrary, capricious or unreasonable. Lavezzi v. State, 219 N.J. 163, 171 (2014).

We first address Ritz's argument the NJEDA used an improper methodology. The heart of Ritz's argument is that NJEDA's use of the PIT methodology erroneously excludes consideration of the minimum wage increase in New Jersey to $15 per hour that was scheduled for 2024.

N.J.S.A. 34:1B-244 provides a grant issued by the Program must be a material factor in a company's decision to retain, relocate, or expand operations in New Jersey. Thus, the applicant must show the New Jersey site is the more

expensive option, based on supporting documentation that is vetted and deemed reasonable by NJEDA staff.

Under N.J.S.A. 34:1B-244(a)(4), to be eligible, an applicant must show an award of a tax credit will be a material factor in the business's decision to create or retain the minimum number of new or retained full-time jobs for eligibility under the program. Therefore:

> (1) Except as determined by the [a]uthority in its sole discretion based on extraordinary circumstances, including, but not limited to, geographic or regulatory constraints of a project, the business shall provide a full economic analysis of the in-state and out-of-state alternatives under consideration by the business to support that it demonstrates a material factor.

> (2) . . . the award of tax credits shall not be considered a material factor in the creation or retention of full-time jobs filled by employees providing professional services, as defined in N.J.S.A. 14A:17-3(1), and their direct administrative support staff, unless as of the date of the business's application, the full-time job is filled by an employee whose primary business office is located outside of the state. Direct administrative support staff shall not include employees in information technology, human resources, or employee relations positions.

> (3) If, in a Garden State Growth Zone, the site was acquired or leased prior to project application, the business shall provide additional extrinsic evidence to demonstrate that the award of tax credits is a material factor in the business's decision to create or retain the minimum number of full-time jobs for eligibility under

8

the [P]rogram, including, but not limited to, viable alternatives to the site and the business's ability to dispose of or carry the costs of the site, if the business moves to the alternate site.

[N.J.A.C. 19:31-18.3(a)(3)(iii).]

Ritz contends the only issues identified by NJEDA to deny the application, the PIT payroll methodology and an incomplete LOI, are not sufficient to support the denial of the tax credit. We disagree.

The Board found Ritz did not demonstrate the award would be a material factor in the decision to relocate because the only factor making New Jersey more expensive was Ritz's reliance on the payroll differential. Utilizing the PIT methodology, NJEDA looked at the cost-benefit analysis of both the in-state and out-of-state locations. It also considered one-time factors, such as one-time capital investments, as well as ongoing costs, like the fifteen-year job requirement. Since future costs are uncertain projections, the Board used the annual cost differential based on the cost for the first year and multiplied it to the time span. (See N.J.A.C. 19:31-18.3(a)(3)(ii)(3) ("The net positive economic benefit shall be discounted to reflect the uncertainty of the business's location after the commitment period expires.")).

The statute required Ritz provide a full economic analysis, which included the PIT approach.[1]  As NJEDA explained it uses the PIT methodology for uniformity and consistency even when costs vary, because it presumes over time the data variances will cancel out since multiple costs cannot be reliably projected in the future.  The NJEDA further assumes certain variables will not vary substantially over time, even if others might.  Ritz provides no support for the argument that NJEDA's interpretation and execution of the statute are prohibited by law.

Moreover, the PIT methodology is consistent with the NJEDA's past practices.  Although, Ritz sought to utilize its methodology over the Board's PIT methodology, we find nothing arbitrary in the Board's application of its methodology.  Additionally, there is no evidence in the record to demonstrate the Board exceeded its delegated authority since Ritz failed to show the Board's application of the statute contravenes or undermines the statute.  Thus, the Board's application and use of the PIT methodology is not arbitrary, capricious, or unreasonable.

---

[1]  The Legislature has updated the Program's statutes various times, but it has never changed its interpretation of full economic analysis.  See L. 2012, c. 35; L. 2013, c. 161; L. 2014, c. 63.

Finally, Ritz argues the NJEDA's decision to use the PIT methodology is rulemaking, as the process is not set forth in any existing rule or statute but contravenes the existing regulations and statutes. As such, Ritz argues "if [] NJEDA wants to use a [PIT] rule . . . it needs to promulgate this methodology through the rulemaking process." We reject this argument.

The Board's application of the PIT methodology is not rulemaking. The Program is intended for a narrow and select group of individuals who are responding to a request for proposals. Additionally, the Legislature closed the Program after seven years of the NJEDA receiving and reviewing applications. N.J.S.A. 34:1B-247(b)(1).

Thus, overall, the Board's PIT methodology is not inconsistent with regulations or past practices, nor is it rulemaking. In sum, the Board's decision is not arbitrary, capricious, or unreasonable.

Any remaining arguments raised by the parties are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2565-21